| 69 | 513 |
| 82 | 435 |

## James N. Young v. Frank C. Rutan.

1. PRACTICE—*Separate Appeals may be Joined as One Case.*—When two or more persons having the right to appeal from a judgment or decree assign errors separately and prosecute appeals from such judgment or decree it is proper to join and docket such appeals as one case.

2. RECEIVERS—*Should be Appointed Only on Specific Allegations Sustained by Credible Evidence.*—It is no slight matter for a court of chancery to lay its hands upon large business enterprises, take them out of the control of capacity and experience and charge them with expenses and commissions, and it should be done only when the court can point to a specific allegation or allegations, sustained by credible evidence, that will justify such action.

3. SAME—*Possibility of Improper Acts by Officer of Corporation Not Ground for Appointment of.*—That an officer of a corporation is in a position where he may betray his corporation will not justify the appointment of a receiver therefor when there is no evidence to establish the probability that he will betray it.

Bill for a Receiver and Injunction.—Appeal from the Circuit Court of Cook County; the Hon. JOHN GIBBONS, Judge, presiding. Heard in this court at the March term, 1897. Reversed with directions. Opinion filed March 15, 1897.

W. S. COY and GREEN, ROBBINS & HONORE, attorneys for appellants.

RALPH H. SMITH, attorney for appellees; ALDRICH, REED, FOSTER & ALLEN, of counsel.

MR. JUSTICE GARY DELIVERED THE OPINION OF THE COURT.

Under the above title a record is filed here in which is shown not only an appeal by the above named appellant, but also an appeal by James N. Young & Co., a corporation of Illinois. Both appeals are from an interlocutory order of January 4, 1897, appointing a receiver of the effects of the corporation, and enjoining Young, the president, from collecting or disposing of some orders for money belonging to the corporation. The appellee has moved to dismiss the appeals as being improperly joined and docketed as one case. The appellants have separately assigned errors. Such a mode of proceeding has been usual in the practice in this State, and without objection. Often a decree is reversed as to some and affirmed as to others, in the same case, upon their several appeals. And the practice may be commended for the same reason that the Supreme Court gave for permitting several land owners to join in a writ of error to review a judgment for taxes. Olcott v. State, 5 Gilm. 481. The motion is denied.

The reasons for the decision in County of Sangamon v. Brown, 13 Ill. 207, do not apply here.

The case is that the appellee filed a bill in which he alleged that the corporation owed him—as assignee of F. C. Helm and Frank B. Modica—at least $2,500; that he held twenty shares of the 3,000 shares of the capital stock of the company; also that as such assignee he is entitled to many more shares.

As a creditor the appellee has no standing in equity. He has no judgment, nor is the bill filed under section 25 of the act concerning corporations. That part of his case may be dismissed from our consideration.

His bill claims that Young wrongfully holds the shares (other than the twenty) to which the appellee is entitled—but in that quarrel the corporation has no interest. If the bill were confined to that, however, it is likely that the cor-

poration might be a proper, if not necessary, party in order that a decree, if the appellee should be successful, might be enforced; but of itself the controversy as to the ownership of shares would be no ground for the order appealed from.

The real gist of the bill is the alleged past—and reason to fear future—misconduct by Young as president.

We assume that it is sufficiently shown that he has, in effect, controlled the corporation; and left alone would continue to control it.

The orders for money before spoken of are, as stated in the order appealed from, thirteen in number, issued on behalf of the corporation directing the payment of, in all, $16,000 to Young.

Whether there be any well grounded reason to fear that Young will not deal justly with those orders, or with the money he may receive upon them, if they are paid, is really the whole question in the case; and in considering that we shall enter into no investigation of the affairs of any former corporation, engaged in other business, to learn whether Young may be charged with misconduct there. If we should do so we must hear both sides, and try a cause collaterally in which the appellee had no interest. One case at a time is enough.

The corporation, Young & Co., was a construction company building a railroad in Canada.

It is certain that in the five years of its existence from 1889 to 1894, the corporation, and Young individually, had exhausted their means and credit in the construction of the road, and then Young, for the corporation, made an arrangement with a capitalist by which another construction corporation was organized, which has nearly or quite completed the road, and from which capitalist or corporation the money in controversy is to come.

For two years before the assignment by Helm and Modica to the appellee, and before which assignment the appellee had no interest, Young had carried the business of the company to the stage which it had reached when this bill was filed, without dissent, and apparently without aid or participation by Helm or Modica.

The appellee stands in their shoes, and can not question the wisdom of any of Young's acts, especially as he is now, by this bill, asking that the fruits of such acts be preserved for his benefit.

Whether the books of the company have been kept so as to meet the approval of expert accountants; whether the corporation, having got substantially through with the one railroad, has as yet any other construction on hand or, not having, has ceased to do business; whether the corporation meetings have been regularly held, are unimportant inquiries.

The allegations of the bill are positive, none on information or belief—and verified by the oath of the appellee—that the bill " is true in substance and in fact, except as to the allegations therein stated to be upon information and belief." It is clear that the appellee never had personal knowledge of most of the matters stated in the bill.

The bill is also verified by the similar oath of Helm.

The bill charges as a fault of Young that he, " without authority from Helm or Modica, in 1894," made the arrangement hereinbefore mentioned through which the work of construction was continued; and yet in an affidavit made by Helm, used in obtaining the order for a receiver, he claims credit for being " the means of bringing into this enterprise " the people with whom Young made that arrangement. The appellee made no affidavit on the application for a reciever, for the reason, no doubt, that he knew nothing of his own knowledge touching the controversy.

There is much loose allegation in the bill about conspiracy, fraud, " tool and accomplice," denial of access to books, etc., etc. The one allegation which, if supported, would have justified the order appealed from, is that in that arrangement through which the work was continued, Young secretly stipulated that he should personally receive $100,000 for bringing it about.

Of the truth of this allegation there is not a scintilla of proof; on the contrary, it is proved that it is false.

That Young is in a position where he may betray his cor-

poration may be admitted, without tending to establish the probability that he will betray it.

Nor will such an admission justify the appointment of a receiver upon the ground, as stated in the brief of the appellee, that " the receiver will do no harm."    It is no slight matter for a court of chancery to lay its hands upon large business enterprises, take them out of the control of capacity and experience, and charge them with expenses and commissions.

It should be done only when the court can point to the specific allegation or allegations, sustained by credible evidence, that will justify such action.

There is no such case here, and the order appealed from is reversed with directions to discharge the receiver, return the effects of the company to the custody from which they were taken, and dissolve the injunction.

The appellee to pay the costs and expenses here, and of the receivership.

Reversed, with directions.