## Lizzie Lemker v. Emily L. Kalberlah.

1.   RECEIVERS—*Appointment Pendente Lite a Matter of Discretion.* —While it is true that the appointment of a receiver *pendente lite* is a matter of discretion, it is not a matter of arbitrary discretion.    Facts must exist and be made to appear to the court warranting the exercise of the power and justifying the taking into its possession of the property in controversy.    It is essential that the complainant should show, first, either a clear legal right in himself to the property in controversy, or that he has some lien upon it, or that it constitutes a special fund out of which he is entitled to the satisfaction of his demand, and secondly, it must appear that possession of the property was obtained by the defendant through fraud, or that the property itself or the income from it is in danger of loss from the neglect, waste, misconduct or insolvency of the defendant.

2.   SAME—*What Plaintiff Must Show.*—The plaintiff must show a case of adverse and conflicting claims to the property and must also show some emergency or danger of loss demanding immediate action, and that his own right is reasonably clear and free from doubt.    If the dispute is as to title only, the court very reluctantly disturbs possession by the appointment of a receiver.    Insolvency of the defendant will not alone warrant a court in appointing a receiver.    It must also appear that the plaintiff has a probable cause of action against the defendant and that the benefit to result from his recovery will either be wholly lost or substantially impaired by reason of such insolvency, unless a receiver is appointed.

3.   SAME—*Court of Equity Proceeds with Caution Against a De-*

*fendant in Possession.*—As against a defendant in the possession and enjoyment of real property, which is the subject-matter of litigation, a court of equity always proceeds with extreme caution in appointing a receiver.

4. SAME—*Appointment Must be Necessary to Preserve Some Particular Property for Such Parties as Shall be Entitled to the Benefit Thereof.*—A receiver should be appointed in no case unless it is made to appear that there is an imperative necessity for the step to preserve some particular property for such parties as shall be entitled to the benefit thereof.

5. SAME—*Where Party in Possession is Insolvent and Plaintiff's Claim is Not Clear.*—When a plaintiff's claim to real estate is not clearly made out, a receiver will be refused when the only reason urged for the appointment is the insolvency of the party in possession.

6. SAME—*Power of Appointment Should be Cautiously Exercised.*— The power of appointing receivers over real property for its better protection and to secure the rents and profits *pendente lite* is regarded as an extremely delicate branch of equity jurisdiction and one whose exercise should be guarded with the utmost caution. Courts are extremely averse to any interference *in limine* with the possession of real estate by a defendant claiming under legal title; and equity will interpose a receiver as against such possession only in cases of great emergency, the general rule being that conflicting questions of title should be determined in courts of law.

7. SAME—*As Against One in Possession—When One Will be Appointed.*—In actions affecting the title to real property a receiver, as against one in possession, will be appointed only in behalf of one having an acknowledged interest or when there is a strong probability of his ultimate recovery.

**Bill for a Receiver over Real Property.**—Appeal from the Superior Court of Cook County; the Hon. JESSE HOLDOM, Judge presiding. Heard in the Branch Appellate Court at the October term, 1902. Reversed. Opinion filed January 16, 1903.

ARNOLD TRIPP, attorney for appellant.

GEORGE W. BROWN, attorney for appellee.

MR. PRESIDING JUSTICE WATERMAN delivered the opinion of the court.

This is an appeal from an order appointing a receiver to take possession of, manage and control certain described real property in the city of Chicago.

The bill filed by appellee, under which the order for a receivership was made, sets forth that Minnie Jansen, mother

of the complainant, was at the time of her death seized in fee simple and in possession of certain described real estate in the city of Chicago; that complainant worked in a cigar store and earned $2,000, which she gave to her mother, who therewith built a house upon a portion of the said premises; that Minnie Jansen died October 24, 1902, and that the said described premises became by means of her death vested in the complainant, Frank C. Jansen and Fred A. Jansen, the only children and heirs at law of the said Minnie Jansen; that Minnie Jansen was for a long time previous to her death ill from tumor of the stomach, in great pain, and frequently under the influence of morphine and not in possession of her faculties or able to transact ordinary business; that on the 20th day of October, 1902, deeds were placed of record purporting to convey said premises from Minnie Jansen to Lizzie Lemker. Copies of such deeds are set forth in the bill, which are in the statutory form of warranty deeds, dated and acknowledged on the 7th day of August, 1902.

The bill sets forth that the said deeds were never delivered to Lizzie Lemker until October 20, 1902, and that Minnie Jansen was not of sound and disposing mind when she executed and delivered said deeds; that no consideration was paid for them; that Lizzie Lemker was a sister of the said Minnie Jansen and had great influence and control over her and that none of the children of Minnie Jansen lived in the house with her; that the complainant was married in 1896 and her two brothers worked in other cities; that the said deeds are null and void and clouds upon the complainant's and her brothers' title to the property described therein; that the premises are improved with frame houses, one known as 927 North Spaulding avenue, renting for $12 per month, the other as 926 North Troy street, renting from $10 to $11 per month; that complainant has been appointed administratrix of the estate of Minnie Jansen, deceased, and has filed her bond in the Probate Court of Cook County; that Lizzie Lemker, grantee in said deeds, has no property or estate, save what she

is in possession of belonging to the estate of Minnie Jansen, and that she is irresponsible; that she threatens to collect the rents of said premises, and if she should do so they would become lost to the complainant and her brothers; that Minnie Jansen was in possession of said premises up to her death and collected the rents therefrom; that complainant and her two brothers are each seized of an undivided one-third of said premises, and the complainant asks that a partition of said premises be made between her and her said brothers.

Lizzie Lemker answered said bill denying that the complainant or any of the children of said Minnie Jansen ever brought home any of their wages earned from the cigar business and gave the same to their mother, and denying that any money belonging to any of the children of said Minnie Jansen was used in the purchase of any of the property described in the bill.

Appellant further answering said that Minnie Jansen was ill for a long time prior to her death, but that she was in the possession of her mental faculties and able to transact all ordinary business, almost up to the moment of her death; that on the 7th of August, 1902, and not on the 20th of October, deeds were executed by said Minnie Jansen to this defendant conveying the premises in question to her; that said deeds were executed by the deceased with full knowledge of their contents and while she was in full possession of her mental faculties, and were duly acknowledged by her on the 7th of August, 1902, and after the execution thereof were delivered by Minnie Jansen to this defendant, intending to convey to this defendant the absolute fee simple title to said premises; that the conveyance of said premises to this defendant was the express wish of said deceased; that she directed the execution of said deeds independent of any advice or suggestions of this defendant or any one in her behalf; that said Minnie Jansen was of sound and disposing mind when she executed said deeds and delivered the same; that it was not intended that any sum of money whatever should be paid by this defendant

Lemker v. Kalberlah.

for said property, on the contrary, said deceased stated at the time of the execution of said deeds that said property was given to this defendant in consideration of the care taken of and services rendered by this defendant to said Minnie Jansen during the lifetime of said Minnie Jansen, and during her long-continued spell of illness that she endured just prior to the time of her death; that during her whole sickness and for many years prior to that time her children never visited their mother, paid no attention to her whatsoever, gave her no care during her last illness and only came to see her when they wanted money or other favors.

Defendant further denies that she had control over her sister, but says that it is true that none of the children of Minnie Jansen lived in the house with her, and further denies that the complainant or her brothers are entitled or have any interest in the said premises or any of the rents thereof; and denies that they are entitled to any partition of said premises. This answer was subscribed and sworn to by Lizzie Lemker on the 7th day of November, 1902.

In support of said answer six affidavits were filed. J. H. Greer, being sworn, says:

" He is a physician and has for seventeen years been well acquainted with Minnie Jansen; that he attended her from March to October, 1902, up to the time of her death and well remembers the occasion of the execution of the deeds August 7, 1902; that at that time and prior thereto and up to almost the time Minnie Jansen died, she was in full possession of her mental faculties, and knew what she was doing; that she consulted with affiant in reference to making over the property in controversy to her sister; that at first she wanted to make a will, but afterward concluded it was a great deal better to make a deed direct to Lizzie Lemker, her sister, because, as she expressed it, they might attempt to contest a will, while a deed conveyed the property absolutely. Affiant advised her that if she so felt, to make a deed direct rather than a will; that she was anxious, and often expressed herself that she wanted what little property she had left to go to her sister, Lizzie Lemker, and that she wanted no part of her property to go to any of

her children. Affiant is positive that at the time of the execution and delivery of the deeds, August 7, 1902, the deceased was in full possession of her faculties, and able to transact all business."

Jacob Kenne, sworn, says:

"That he is a notary public; that on August 7, 1902, he prepared the deeds in controversy, and took them to the home of Minnie Jansen for execution; that he saw Minnie Jansen, who, at that time, was in the possession of her faculties, and able to transact business; that as notary public he explained the contents of the deeds to her; that she understood them, and expressed an anxiety that the property should be transferred to her sister; that after affiant had explained the contents of the deeds to her, she expressed satisfaction with the same, and acknowledged both of the deeds; thereupon affiant, as notary public, attached his certificate of acknowledgment thereto; that the execution of the deeds was without any interference whatever from anybody, and was the free act and deed of Minnie Jansen."

Charles Behrens says:

"He lived in the flat occupied by the deceased; that he roomed there for one and one-half years; he was well acquainted with deceased, saw her daily, conversed with her daily up to the time of her death; on many occasions she expressed herself that she desired her property to go to her sister; that at no time shortly prior to the death of Minnie Jansen was she in an unsound state of mind; on the contrary, she was of sound mind and memory, knew what she was doing and was capable of transacting all ordinary business and affairs; that deceased spoke to affiant with reference to the transfer of the property; that he knows that the deeds were made by the deceased with her full knowledge and consent, and that no undue influence of any kind was used on said deceased to induce her to make these deeds, and that at the time she was in full possession of her mental faculties."

Margaret Sullivan, Minnie Mitchell and Emily Korth, the latter being one of the matrons of the Chicago police station, each state that they well knew Minnie Jansen, saw her during her last illness and know that she was on the 7th of August, 1902, when the said deeds were executed, of sound mind and memory, knew what was being said to her and what she was doing, readily answered questions put

to her, knew the contents of the deeds, and prior thereto expressed herself that it was her desire that the property should go to her sister, Lizzie Lemker.

Emily Korth also says that she had known the entire family of Minnie Jansen for upward of twenty years; that on many occasions, while talking the property matter over with the deceased, she stated to affiant that whatever property she had she intended to deed to her sister, defendant, but she did not intend that any of her children should have any of the property.

While it is true that the appointment of a receiver *pendente lite* is a matter of discretion, it is not a matter of arbitrary discretion; facts must exist and be made to appear to the court warranting exercise of the power and justifying taking into its possession of the property in controversy. It is essential that the complainant should show, first, either a clear legal right in himself to the property in controversy, or that he has some lien upon it, or that it constitutes a special fund out of which he is entitled to the satisfaction of his demand, and secondly, it must appear that possession of the property was obtained by the defendant through fraud, or that the property itself or the income from it is in danger of loss from the neglect, waste, misconduct or insolvency of the defendant.

The plaintiff must show a case of adverse and conflicting claims to the property and must also show some emergency or danger or loss demanding immediate action and that his own right is reasonably clear and free from doubt. If the dispute is as to title only, the court very reluctantly disturbs possession by the appointment of a receiver. Insolvency of the defendant will not alone warrant a court in appointing a receiver. It must also appear that the plaintiff has a probable cause of action against the defendant and that the benefit to result from his recovery will either be wholly lost or substantially impaired by reason of such insolvency, unless a receiver is appointed.

As against a defendant in the possession and enjoyment of real property which is the subject-matter of litigation, a

court of equity always proceeds with extreme caution in appointing a receiver. High on Receivers, Secs. 11–18.

A receiver should be appointed in no case unless it is made to appear there is an imperative necessity for the step to preserve some particular property for such parties as shall be entitled to the benefit thereof. First National Bank v. Gage, 79 Ill. 207–209; 20th American & English Encyclopedia of Law, 1st Edition, pages 16 and 20.

When a plaintiff's claim to real estate is not clearly made out a receiver will be refused when the only reason urged for the appointment is the insolvency of the party in possession. 20th Am. & Eng. Enc. of Law, 1st Ed., page 39.

The power of appointing receivers over real property for its better protection and to secure the rents and profits *pendente lite* is regarded as an extremely delicate branch of equity jurisdiction and one whose exercise should be guarded with the utmost caution. Courts are extremely averse to any interference *in limine* with the possession of real estate by a defendant claiming under legal title; and equity will interpose a receiver as against such possession only in cases of great emergency, the general rule being that conflicting questions of title should be determined in courts of law. It was the established doctrine of the English chancery that the court would never exercise its extraordinary power by appointing a receiver over real property in behalf of a claimant out of possession, except in aid of an equitable title. High on Receivers, Secs. 553 and 554; Carrow v. Ferrior, L. R., 3 Ch. App. 719.

In actions affecting the title to real property a receiver, as against one in possession, will be appointed only in behalf of one having an acknowledged interest or when there is a strong probability of his ultimate recovery. High on Receivers, Secs. 556 and 557.

In the present case a receiver has been appointed upon a bill verified by the complainant only, and without a supporting affidavit, the material allegations in said bill being such that from an examination of the answer and affidavits in support thereof, it seems very probable that the com-

plainant can have no knowledge of the matters and things upon which her bill is predicated, save by information and belief. The bill, answer and affidavits presented to the court upon the application for a receiver, so far from making it appear probable that the complainant and her brothers are the owners of the property in question and entitled to a partition thereof, are the reverse. If, under such an exhibit as was made in this case, a receiver can be appointed and the possession of real property taken away from one who has a plain legal title of record thereto, we know not who can be said to be secure in the possession of real property or the rents arising therefrom.

Compared with many ownerships, the property in this case is of little importance. If, under a bill containing similar allegations and the same absence of supporting affidavits, an attempt had been made to take by the appointment of a receiver the Great Northern Hotel or the Ashland Block out of the possession of those in whose hands these properties now are and who have the legal title thereto, and in response to such bill an answer with affidavits accompanying it such as was filed in this case had been interposed, the proposition that under such circumstances a receiver would be appointed would have appeared startling.

At the bar of justice all men are equal. The same consideration is due to an attempt, by the appointment of a receiver, to take out of the hands of one having a plain legal title thereto the possession of a cottage worth but a thousand dollars, as to an endeavor to seize by the strong arm of the law properties worth millions. Upon allegations of the obtaining title to and possession of real property by fraud, it is not the case that the allegations of the bill only are to be taken into consideration. The answer with all accompanying affidavits and exhibits are to be put into the scale.

In the present case there is not an allegation that the property is being allowed to go to decay for want of proper care or is in danger of or has been sold for taxes, or that anything whatever claimed by the complainant can in any

event be lost, save rents, which, pending litigation, may be collected by the defendant, and as to such rents, it is not made to appear that they will amount to more than the taxes, insurance and proper care of the property will come to.

The order appointing a receiver is reversed.