## Independent Brewing Association v. Henry P. Klein et al.

### Gen. No. 13.312.

1. DECREE—*when final for purposes of appeal.* In a proceeding by which corporate acts of management are sought to be questioned, a decree which finds with the allegations of the bill and appoints

Independent Brewing Assn. v. Klein.

a receiver, etc., is final for purposes of appeal where no dissolution is prayed.

2. FRANCHISE—*when not involved for purposes of appeal.* A franchise is not involved, so far as the question of the right to appeal to the Appellate Court is concerned, in a proceeding to attack corporate acts of management and for a receiver, etc., no dissolution being prayed.

3. FREEHOLD—*when not involved.* A bill in equity which among other things seek to set aside corporate purchases of real estate as *ultra vires* and unauthorized, does not involve a freehold so as to require the appeal to be taken to the Supreme Court.

4. RECEIVER—*what essential to appointment of, under section 25 of Corporation Act.* A receiver cannot be appointed under section 25 of the Corporation Act where the bill does not pray, nor the decree order, a dissolution of the corporation.

5. RECEIVER—*what essential to appointment of for corporation, under general powers of equity.* In order that a receiver may rightfully be appointed for a solvent, going corporation, it must appear that there is no other adequate remedy. The only instances in which the appointment of receivers have been sanctioned for solvent corporations are those cases where irreconcilable dissensions have arisen between the officers and managing directors, resulting in retarding the corporate enterprise and threatening its existence.

6. CORPORATION—*how by-laws enacted.* In Illinois the by-laws of a corporation are by statute provided to be enacted by the directors. The concurrence of the stockholders is not needed, and, if procured, adds no weight to their validity.

7. CORPORATION—*what knowledge chargeable to director of.* A director of a corporation is charged with knowledge of what is being officially done by the directors of the company, at least to the extent of those matters officially recorded, he having access to the records.

8. CORPORATION—*when stockholders precluded by laches from attacking official acts.* A stockholder is barred by *laches* and acquiescence from questioning the propriety and validity of corporate acts of management where for a period of eight years he has failed to protest or complain.

9. CORPORATION—*what not ultra vires brewery association.* The purchase of beer stands, involving the acquisition of real property, is held not *ultra vires* a brewery association.

10. CORPORATION—*what sales of real estate to, voidable.* Sales of real estate made by officers of a corporation to such corporation, of property in which they have an interest, are not void but voidable at the instance of the corporation.

11. CORPORATION—*what sufficient ratification of voidable real estate purchases.* A sale of real estate between an officer of a corpo-

ration and the corporation, which is not fraudulent, may be ratified by the stockholders notwithstanding the directors may have been disqualified from authorizing it on account of their individual interest, and an authorizing resolution which could not have been passed but for the concurring vote of the stock held by such disqualified directors, may constitute a sufficient legal ratification.

12. CORPORATION—*when bill of stockholder attacking corporate management will be dismissed.* A bill by a stockholder questioning the validity and propriety of official acts of management will be dismissed where subsequent to the filing of such bill the acts in question, not in themselves *ultra vires* or inherently void, have been sufficiently and legally ratified by the stockholders.

13. CORPORATION—*who cannot question propriety of compensation to officers.* A stockholder who has participated in the fixing of officers' salaries, cannot subsequently question the same, nor can a stockholder who has acquiesced in the payment of such salaries, or who has himself been an officer and received a salary under the same general plan of compensation to officers, be heard in a court of equity to question their propriety.

14. CORPORATION—*what ratification by stockholders of alleged unauthorized acts of management.* Purchases of additional stock by a stockholder with knowledge of alleged illegal unauthorized conduct by officers, operate as a ratification of such acts.

15. CORPORATION—*when officer not liable for loans made to one of their number.* One officer of a corporation is not liable for the repayment of a loan made by the corporation to another officer.

16. CORPORATION—*rights of stockholders purchasing pendente lite.* A stockholder of a corporation who acquired his stock during the pendency of litigation cannot question alleged unauthorized acts which in the pending litigation are sought to be questioned.

17. BILL OF COMPLAINT—*when dismissed without prejudice.* In this case a bill of complaint filed by several stockholders, the principal of whom are barred by *laches*, acquiescence, ratification and estoppel, from obtaining the relief prayed, may be dismissed as to the remaining stockholders without prejudice to their rights where it appears that they were not so barred either by *laches*, acquiescence, ratification or estoppel.

Bill in equity. Appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding. Heard in this court at the October term, 1906. Reversed and remanded with directions. Opinion filed July 1, 1907.

A motion made by appellees to dismiss the appeal for want of jurisdiction was reserved to the hearing.

That motion is denied for reasons which will be found in the opinion of the court.

**Statement by the Court.** Henry P. Klein, a stockholder and also a director in the Independent Brewing Association, on October 23, 1905, filed his bill of complaint against the company and several of its officers, past and present, and one Conrad Furst, a stockholder, and prayed *inter alia* for the following relief: That a receiver be appointed, with the usual powers of receivers, to take possession of, hold and dispose of all the books and properties, equitable interests and things in action of said Independent Brewing Association, under the order of the court, and that the real estate purchased, as charged in the bill, from the defendant Leo Ernst and Otto Ernst, Jr., may be reconveyed under the direction of the court to said Leo Ernst, and said defendants, except said brewing association and said Conrad Furst, and each of them, be required to account for and pay into the said brewing association such moneys as may be found due and owing to such association from the defendants on account of such real estate transactions, over and above the amount or amounts which may be realized from the sale thereof under the direction of the court, and that in the meantime the three Ernsts, Leo, Otto and Emil, be restrained from conveying, transferring, concealing or encumbering any of the assets of said brewing association, including the real estate purchased from Leo and Otto Ernst, until the further order of the court, and for general relief.

An engrossed amended bill was filed after the hearing by leave of court April 13, 1906, and the answers filed were allowed to stand as answers to the engrossed amended bill. On November 22, 1905, an order was entered allowing Adam Frederick, Edward C. Knuth, John Busch, A. Rohn and Phillip May to intervene, and on March 9, 1906, John Busch withdrew and the cause was dismissed as to him.

The pleadings and the proofs are voluminous. We shall therefore confine our statement and review to such limited portions only which we deem necessary to a decision of the case and a clear understanding of the issues involved.

The Independent Brewing Association was incorporated under the laws of this state February 24, 1890, with a capital stock of $500,000, divided into 5,000 shares of the par value of $100 each, for the manufacture and sale of beer, with its brewery established in the city of Chicago. Henry P. Klein was the originator of the brewery association, and a director from the start, and at the time of filing the bill owned 1,135 shares of its stock. After Klein had controlled and dominated in the operation of the brewery until September, 1896, the three Ernsts and one F. W. Boldenweck purchased a majority of the stock and went into active and controlling management of the brewery; that the Ernsts owned between them 2,430 shares and F. W. Boldenweck 280 shares, William Boldenweck afterwards acquiring the latter 280 shares. That Conrad Furst subsequently secured from the Ernsts' holdings 2,410 shares. That while Conrad Furst is the actual owner of the shares last mentioned, there is some agreement or understanding said to exist by which the Ernsts have a right of repurchase. The officers of the association are Leo Ernst, president, Leo E. Ernst, secretary, and Emil Ernst, treasurer, and the directors, the three Ernsts, complainant Henry P. Klein and his son Joseph Klein. It is charged "that on or about the 11th day of September, A. D. 1896, the said Emil Ernst, said Leo Ernst, and said Otto Ernst and said F. W. Boldenweck fraudulently and unlawfully entered into a conspiracy together for the purpose of wrongfully and fraudulently depriving your orator and other stockholders of said corporation other than said Ernsts, said Furst and said Boldenwecks, of their rights and interests as such stockholders, and of fraudulently and unlawfully ex-

ploiting said corporation and converting its funds and assets for the benefit of said Emil Ernst, said Leo Ernst, said F. W. Boldenweck and said Otto Ernst; that on or about the 12th day of February, 1903, said Conrad Furst acquired nominal title to about 2,400 shares of the capital stock of said corporation from said Emil Ernst and said Leo Ernst; that said Conrad Furst has never in person actively participated in the affairs of said corporation, either as a stockholder or otherwise; but on the contrary the stock of Conrad Furst has always been represented and voted by said Leo Ernst and said Emil Ernst.

"That in pursuance of said conspiracy said Emil Ernst, said Leo Ernst, said F. W. Boldenweck and Otto Ernst have from time to time heretofore, since September 11, 1896, unlawfully and fraudulently caused and permitted large sums of money to be paid out of the funds of said corporation to said Leo Ernst, said Emil Ernst, said Otto Ernst, said F. W. Boldenweck, said William Boldenweck and each of them, and have purchased property with the funds of said corporation from said defendants, or different ones of said defendants, at fraudulently excessive prices, and have from time to time paid out large sums of money from the funds of said corporation to different ones of said defendants as pretended salaries to them, as officers of said corporation, in excess of the salaries to which said defendants were from time to time lawfully entitled under the by-laws and lawful resolutions of the directors of said corporation, and are now fraudulently and unlawfully paying to said Emil Ernst, Leo Ernst and Leo E. Ernst, out of the funds of said corporation, as pretended salaries to said last mentioned defendants for respective offices now held by them as aforesaid, large sums of money, viz.: ten thousand (10,000) dollars per annum, * * * and are and have been, since last mentioned date, continuously hitherto, arbitrarily, fraudulently and unlawfully manipulating the affairs, moneys and properties

of said corporation for their own use and benefit, and to the great injury of your orator in the premises."

The bill further charges that the Ernsts were owners of certain real estate in Chicago, or controlled encumbrances thereon, which they caused to be conveyed to the association at excessive values; that to enable this to be carried out, on October 14, 1897, they caused a resolution to be passed at a meeting of the directors, authorizing the purchase of real estate necessary for the business of the association; that the resolution was fraudulent. That several pieces of property were thus acquired by the association, among others, Lincoln Turner Hall, Glen Ellyn, 579 West Twenty-second street, 463 to 469 West Belmont avenue, 3452 North Clark street and 517 West Twenty-second street, at a gross price of $122,200. All these properties were known as "beer stands," and secured for the asserted purpose of securing exclusive sales of the association beer thereon, and keeping out all other brews. The title to these several properties was taken in the name of Otto Ernst, Jr., in trust for the association, and a declaration of such trust made and delivered by said Otto Ernst, Jr., to the association, and was kept by it among its papers.

It is again charged that the by-laws were so changed, as a part of the conspiracy, that the officers were voted large and excessive salaries, and that the Ernsts and F. W. Boldenweck borrowed money which they did not repay, either of principal or interest. That while large profits were made, no dividends were declared or paid for two years.

Appellants all answered, some separately and others jointly. Every act of fraud charged was explicitly and categorically denied, also the charges of conspiracy, that the real estate purchased by the corporation was either fraudulently or unlawfully acquired, or that prices paid were excessive, and averring that all such property was acquired pursuant to a resolution of the board of directors, and to meet the needs of the asso-

ciation business, and to promote its welfare; denied also that illegal or excessive salaries were paid or moneys unlawfully borrowed, or that the money so borrowed was not repaid with interest; denied all acts of misfeasance or illegal conduct charged, or that any liability rests upon them to account as prayed.

The answers affirmatively charge that Henry P. Klein had both actual and constructive notice of the acquisition by the association of all the real estate set out in the bill; that he was a stockholder and director from the organization of the association to the time of commencing the suit; that he had access to all the books and papers of the association at all times; that he was present at nearly all the meetings of the stockholders and the board of directors, and received $300 a year as salary as director, although no pro-vision therefor was made by the by-laws; that he either made or seconded the motion for the allowance of such annual salaries as were paid to the officers for three years prior to exhibiting his bill, and that in 1905 he voted for and assisted in the bonding of the association and the mortgaging of its brewery property and the Lin-coln Turner Hall for $125,000, also for the purchase of the Rienzi property, and then he insists that he,, Klein, is estopped and barred by *laches* and acqui-escence from the relief prayed.

It is alleged that the association is solvent; and a going concern, and avers that Henry P. Klein en-deavored to force Leo Ernst to buy his stock at $165 per share, and threatened, if he did not accede to such request, he, Klein, would have the association and its property in the hands of a receiver within twenty-four hours.

The decree finds the facts substantially as set up in the engrossed amended bill, and appoints the Chicago Title & Trust Company receiver, in bonds of $50,000, and directs it to take charge of the assets and effects of the association, and proceed forthwith to carry on

the business of the asssociation until the further order of the court. The association and Leo and Emil Ernst are ordered to deliver to the receiver all books of account, securities and evidences of indebtedness and effects belonging to the association. The receiver is directed, from time to time, to make report of its actions and doings, and be at liberty to apply to the court for further directions. The court reserved the question of the duration of the receivership and the final disposition by the receiver of the property and effects coming into its hands as such receiver. The receiver was ordered neither to employ or pay out any money to any of the parties to the suit without the express direction of the court.

The decree· then directed the· cause to be referred to a master of the court to take an account between the association, the three Ernsts, and F. W. Boldenweck, according to the findings in the decree, the proofs taken, and the instructions of the court, and then proceeds specifically to direct the lines upon which the account shall be taken.

From this decree appellants prayed and were allowed an appeal to this court in bond of $100,000. They perfected their appeal and bring the record to this court for review.

LOESCH, SCHOFIELD .& LOESCH, JOSEPH H. MUHLKE and FREDERICK Z. MARX, for appellants; FRANK J. LOESCH, of counsel.

JACOB J. KERN and JOHN A. BROWN, for appellees.

MR. JUSTICE HOLDOM delivered the opinion of the court.

The controlling questions here argued and pertinent to our decision are: First, the jurisdiction of this court to entertain this appeal; second, the power of the court to appoint a receiver; and third, the right of Henry P. Klein to the relief granted by the decree,

also that of those appellees here resting their claims upon such alleged right; and the underlying and subsidiary questions whether such rights have been waived by either the *laches* of Henry P. Klein in asserting them, his acquiescence in the acts now claimed to be wrongful, or by his affirmative action in taking an active part in causing to be done the several things about which he now complains.

First. We have no hesitation in declaring that the decree is a final one, from which an appeal is rightfully taken to this court. It settles all the claims made by the bill in the findings of the decree. The relief granted by the decree would have the effect, but for the perfecting of this appeal, to take the brewery corporation plant and property away from the control and management of its officers. It is a finality in terms as to all the questions involved. The bill by no averment seeks the dissolution of the corporation, and while the decree temporarily deprives the officers of the right of management and relegates its business and assets to the receiver, there is no intimation in either its finding or ordering parts that a dissolution is contemplated, but, directly to the contrary, the way is clearly open to a restoration of the corporate property to its lawful managers after the taking and settlement of the accounting.

No franchise is involved, so far as the decree discloses, and it is to the decree we must look to determine that question. Chicago Steel Works v. Illinois Steel Co., 153 Ill. 9.

It is the contention that a freehold is involved. This is likewise fallacious. There is no such result following upon the decree as entered, that one of the parties may gain and the other lose a freehold estate. Nevitt v. Woodburn, 175 Ill. 376. In case *supra* the Supreme Court dismissed the appeal, holding that a freehold was not involved, notwithstanding the bill in certain event invoked the power of the equity court to remove the acting trustee and appoint another in his place,

which would operate to compel a conveyance of the real estate by the old to the new trustee.

A case very similar to the one under review in many of its facts and the relief sought is Robertson v. Bucklen, 107 Ill. App. 369. The court was asked to set aside a sale of real estate made by a majority stockholder to the corporation, and to compel the stockholder who made the conveyance to return to the corporation the purchase money. This in effect is part of the relief claimed by Klein in relation to the real estate conveyed by the Ernsts to the brewing association. There, as here, like motion was made to dismiss on the ground that a freehold was involved, but the court denied the motion, as we have already done.

We wish to emphasize in our discussion and determination of the matters involved in the second and third points, that it must be borne in mind that the corporation, the brewing association, at the time of the filing of the bill was a solvent, dividend paying, going concern, with ample assets with which to meet all liabilities, and a handsome balance of good assets amply sufficient to protect every stockholder to more than the extent of his investment, and that Henry P. Klein was a competent brewer, thoroughly familiar with the method and manner of operating the business of the association, and a director with a salary all the time during which every dereliction about which he complains occurred. That, with infrequent exceptions, he attended all the directors' meetings and every stockholders' meeting, and took an active, prominent part in shaping the policies of the association at all of them.

Second. The power of a court of chancery to appoint a receiver of a corporation is confined to that given by section 25 of the Corporation Act, chap. 32, R. S., which is restricted to cases in which a dissolution may be brought about at the suit of a creditor. The power given to the court by the statute is to dis-

solve the corporation for "good cause shown," and in the process of dissolution to appoint a receiver to marshal the assets, dispose of them, convert them into money and distribute the proceeds ratably among those whom the court shall decree entitled thereto. In such a proceeding all of the stockholders are necessary parties, for none other than the parties are bound by the decree. Coquard v. National Linseed Oil Co., 171 Ill. 480; Parmalee v. Price, 208 *ib*. 544.

It would seem to be sufficient to observe that the bill does not ask, neither does the decree order, a dissolution of the corporation. It is therefore apparent that the appointment of a receiver cannot be maintained upon statutory grounds.

It is, however, insisted that the appointment of the receiver can be sustained under the general powers vested in courts of equity to conserve the rights of parties menaced by the fraudulent actions and conduct of another, and that such powers are sufficiently broad to justify the appointment of a receiver, when such action may be deemed essential to the protection of property rights involved. We do not regard it as necessary to a decision here to decide any such question, for whatever may be the law as to the jurisdictional authority of the chancellor to appoint a receiver in virtue of the general equitable powers vested in a court of chancery, we are convinced that the facts in this case do not warrant its exercise.

The case of Black Diamond Company v. Waterloo, 62 Ill. App. 206, is peculiarly in point as to the extremity of the situation justifying the ousting of the officers of a corporation and the installing in their place of a receiver. To put the property of a solvent, going concern into the hands of a receiver is not to be tolerated except as a *dernier ressort* where no other course can be found which will furnish a sufficient corrective. True it is, as this court say in Young v. Rutan, 69 Ill. App. 513, "It is no slight matter for a court of chancery to lay its hands upon large busi-

ness enterprises, take them out of the control of capacity and experience, and charge them with expenses and commissions. It should be done only when the court can point to the specific allegation or allegations sustained by credible evidence that will justify such action.''

The frauds charged in the bill are confined to the real estate transactions, the payment to the executive officers of excessive salaries, and their borrowing money from the corporation without repayment of either principal or interest. The parties charged with liability for these alleged irregularities are not claimed by averment in the bill or found by the decree to be financially irresponsible, but, on the contrary, we infer from the record that all are abundantly able to make reparation if the court should so require, with the exception of J. W. Boldenweck, and he is no longer interested in the brewing association, and so far as his liability is concerned, nothing could result advantageously from the appointment of a receiver for a corporation in which he has no concern. An injunction to maintain the *status quo* and an accounting between the parties and the corporation as to all the financial matters about which complaint is made, would be an ample and complete remedy and assure to the complaining parties all the relief to which they are entitled to make claim.

This court also say, in Shack v. McKey, 100 Ill. App. 294, ''The power to appoint a receiver and put him in possession of another's property is one of the most important prerogatives of equity, only to be exercised by the conscientious chancellor where it is clear there is no other adequate means of doing justice between the parties and preventing the accomplishment of a wrong.'' High on Receivers, sec. 10; Cook on Corporations, secs. 746-863.

As said by Cook, sec. 863: ''The court will not injure the whole enterprise to correct a wrong done

to the enterprise.   Sometimes the court will appoint a receiver of an insolvent corporation at the instance of a stockholder.''   Such receiver, however, will in no case be appointed, except where such a course is imperative to protect the assets of an insolvent concern. Here we find the order of appointment in express terms, excluding all the officers from its management, those who have been engaged for years in its prosperous conduct, and the putting into control as receiver a corporation about whose ability successfully to manage and conduct such a corporate enterprise, requiring, as it does, expert technical knowledge, there is no proof and therefore no room for favorable inferences exists.   By the terms of the appointing order, the receiver is deprived of the right to avail of the managerial knowledge.   It is literally pitched into the brewery, a going concern, to conduct it haphazard, as best it may.   Instead of conserving the corporate property by such an order, it would appear to be menaced with disintegration and possibly ultimate ruin.   Lemker v. Kalberlah, 105 Ill. App. 445; Ruprecht v. Henrici, 113 Ill. App. 398; Rich v. Mulloney, 121 Ill. App. 503; 10 Cyc., pages 989 and 991.

The only instances in which the appointments of receivers have been sanctioned for solvent corporations are those cases where irreconcilable dissensions have arisen between the officers and managing directors, resulting in retarding the corporate enterprise and threatening its existence.   To straighten out such complications, to prevent disaster and ruin to the business and the stockholders, receivers have been temporarily appointed to act until the tangle in the corporate affairs could be unraveled and the stockholders given the opportunity, under the direction and the protective order of the court, to elect and install new directors, officers and managers.   When this has been accomplished, the receivers have invariably been discharged and the corporate property restored to the control and

management of the new regime installed under the pro-
tecting supervision of the court. The appointment of
the receiver here was improvident, unwarranted and
erroneous.

Third. That the Ernsts and Furst and Boldenweck
acquired their stock holdings rightfully and legally
cannot be gainsaid. That when any of them held office
in the association they were elected in accordance with
the by-laws governing elections, is nowhere disputed.
The contentions arise on their conduct as officers and
directors of the association. Prior to November 12,
1896, the by-laws of the association provided that no
officer should receive a yearly salary in excess of three
thousand dollars. On that day the by-law was amended
to read, "The salaries of the officers of the com-
pany shall be fixed from time to time by the board
of directors." At a meeting of the directors May 9,
1901, new by-laws were adopted, the one as to salaries
being that "The salary of each officer of the company
shall be such as may be fixed by the board of directors
from time to time at any regular or special meeting
of the board." The duties and powers of enacting
by-laws of a corporation are entrusted by the statute
to the directors. The concurrence of the stockholders
is not needed, and if procured adds no weight to their
validity. Manufacturers Ex. Co. v. Landay, 219 Ill.
168.

Salaries were thereafter paid to the president, vice-
president and treasurer at the rate of $6,000 per annum
until 1901. In November, 1901, the salaries of the
president and treasurer were increased to $7,500.
Boldenweck, as secretary and in charge of the brewery,
assumed the additional duties of brew master in place
of an assistant at the salary of $1,800 a year, whose
services were then dispensed with, and was paid $4,000
a year. In 1901 the president and vice-president, who
also discharged the duties of treasurer, that office hav-
ing been temporarily made vacant, were voted $10,000

salary. February, 1902, the same salary was voted by the board of directors, viz.: $10,000 each, to the president, vice-president and treasurer, and like action was taken by the directors in January, 1903, March, 1904, and February, 1905; as to official salaries. Henry P. Klein was present and took part at all the foregoing meetings of the directors. By resolution of the directors passed October 14, 1897, in a regular meeting, the executive officers of the association were authorized to purchase such real estate which, in their opinion, might be suitable for saloons and necessary for promoting the sale of the beer of the association. The executive officers did purchase several pieces of such property, as appears from the statement preceding this opinion and the report made by the president to the stockholders hereafter noted.

A special meeting of the stockholders was held November 28, 1905, at which Henry P. Klein was present and took an active part. Four thousand, six hundred and seventy-two shares of the 5,000 shares of capital stock were represented and voted at this meeting. Leo Ernst, the president, made a statement of all the business of the company since 1896, being the time from which his connection with the association dated, and also reported that under the resolution of October 14, 1897, about twelve pieces of property, together with some small lots, had been acquired by the association at a total cost of $245,000. At this meeting Henry P. Klein and others spoke in criticism of the action of the executive officers in making the purchases of real estate reported. Thereupon the following resolution was offered:

"We the stockholders of the Independent Brewing Association, in Stockholders' special meeting assembled, at the office of the Association in Chicago, on the 28th day of November, 1905, 4672 shares of stock being represented at this meeting, having heard the detailed report of President Leo Ernst, of the purchase of real estate made by the Association since the

year 1896, for the purpose of its business, and to sell its beer at retail, and for distributing stations, do hereby ratify, approve and confirm all such purchases of real estate heretofore made by the board of directors, the titles to which are now in the Independent Brewing Association.''

This resolution was carried by a vote of 3,287 shares against 1,385 shares, being a clear majority of all the shares voting of 902. Klein voted with the minority. Thereupon another resolution was offered and adopted by a majority vote of 2,222 shares of stock, Klein again voting his stock in the negative. Said resolution reads:

''Whereas, the Independent Brewing Association has purchased various parcels of real estate for the purpose of its business; and

''Whereas, it is desirable that the Board of Directors shall have the power to sell any of said parcels of real estate which are not a part of the brewery plant, if, in their judgment, it would be for the best interests of this corporation to sell the same;

''Now, therefore, we, the stockholders of the Independent Brewing Ass'n in stockholders' special meeting assembled, called pursuant to the by-laws, do hereby authorize and empower the Board of Directors to sell all the various parcels of real estate not a part of the brewery plant, purchased by this Company, or any of said parcels of real estate, as in their judgment they may deem best for the interests of the Company, including in such sale the good will, as beer stands, of said corporation, and each of them.''

At the annual meeting of the stockholders held January 17, 1906, while this suit was pending, all of the capital stock, saving only 36 shares, being represented in person or by proxy, the minutes of the special stockholders' meeting were read and approved. The annual statement was read and approved. A resolution authorizing a sale of the association real estate, except the brewery plant, was passed, substantially in the words of the resolution voted at the special meeting

of November 28, 1905. The five directors elected consisted of the three Ernsts, Henry P. Klein and P. Jummel. They were the unanimous choice of the stockholders, and on due motion made, Henry P. Klein cast one ballot for all the shares present or represented.

Klein in his testimony admits that he was aware of the resolution of October 14, 1897, in relation to the association's acquiring real estate for beer stands, although he disclaims having knowledge of its extent, yet he voted for the resolution and never, for aught the record discloses to the contrary, made any protest or criticism until the special meeting of the stockholders November 28, 1905, a period of time extending over eight years.

Klein did not occupy the relation to the association of a minority stockholder. He was a director and as such not only chargeable with knowledge of what was in fact being done by the official management, but the proof in the record, unchallenged, demonstrates that he had actual knowledge of all the transactions which he is here disputing at the several times when they transpired, and that he voted for most of them in directors' meetings, and that some of them were projected upon his initiative action. Salaries were voted and the purchase of six pieces of real estate and the $125,-000 mortgage put upon the association plant and property by resolutions of the directors at meetings which he attended, and at which he voted. He lent verity to the actions of the special stockholders' meeting of November 28, 1905, by voting for the approval of the minutes of that meeting, which contained the resolutions in relation to the association's acquired real estate, at the annual meeting of January 17, 1906, and in voting in favor of a resolution authorizing a sale of that real estate by the executive officers of the association. During all of this time Klein received a yearly salary of $300 as a director, and was as intimately informed

as to the working and operation of the brewery as any officer of the association. He cannot screen himself behind a shadowy claim of ignorance, when actual knowledge is proven, and, however, were it lacking, his relationship to the association imposed upon him the duty of keeping himself informed, and the law will impute to him such knowledge, and bar him from being heard to the contrary. Jummel, the bookkeeper, swears that statements were not only furnished Klein, but that the books were always open for his inspection as to any detail about which he might wish information. There is no evidence in this record that any artifice was used or any obstacle placed in the way of Klein, preventing or even discouraging him from freely informing himself about the business and dealings of the association, the channels to which information were always open and accessible to him.

The purchases by the officers of real estate were upon full information touching such purchases, ratified by the stockholders at their meeting held November 28, 1905, and Klein, after being fully heard in opposition, is also concluded by such ratification. He is further estopped by his *laches* and assumed acquiescence flowing from his failing to protest or complain for more than eight years.

The argument that these dealings in real estate were secret and withheld from Klein, is futile in the light of the undisputed facts. The real estate purchases were not *ultra vires*. They were in furtherance of the business authorized by the charter of the association, and, in the view of the directors, necessary to its prosperity. Kraft v. West Side Brewery Co., 219 Ill. 205, is to this effect; also Central Lumber Co. v. Kelter, 201 Ill. 503.

It is urged that the transactions characterized as illegal were brought about by the vote of dummies acting in the interests of the Ernsts, and Adams v. Burke. 102 Ill. App. 148, affirmed in 201 Ill. 395, is cited as a

parallel sustaining cause. But the cases are diametrically at variance. In the Adams case the directors controlled by the major stockholder held but one share of stock each, and their vote was always at the bidding of the majority stockholder. But Klein himself was a large stockholder, acting for himself and in his own interest, and his vote made possible the accomplishment of the major part of the transactions now complained about, and the other directors were also substantially interested and uncontrolled. S. S. of O. of I. Hall v. Baker, 134 Ind. 293, is not at all relevant. There the court founded its interference to "wrest the management and property of the corporation from the hands of *designing, wicked,* incompetent and irresponsible officers in charge of its affairs, who are squandering and converting the funds and refusing an accounting by such officers, and placing the property and management of the affairs of the corporation in the hands of a receiver, holding it in abeyance until the management is changed." Surely it cannot be urged in any serious manner that any proof here justifies even an inference or suspicion that the Ernsts at any time did anything which falls within the characterizations quoted. They are neither designing or wicked, incompetent or irresponsible, and so far from refusing an accounting, made a very comprehensive and understandable one to the stockholders. They have never refused any information requested, or shut the books to the view of any stockholder desiring to examine them.

It is said that the resolution did not authorize purchases of real estate from the Ernsts. This is patent from a reading of the resolution. The inquiry therefore becomes pertinent as to whether the conveyances are void or merely voidable, and if the latter, then whether the doctrine of estoppel or *laches* can be invoked, becomes important, and likewise whether Klein, with knowledge of the facts, imputable or actual, ratified the transactions. Was the fraud, if any, actual

or constructive? What we have already said as to Klein as a salaried director being chargeable with knowledge of all the association business, is equally applicable to the real estate transactions, as to which we think the proof sufficiently certain to justify the conclusion that he had actual knowledge on this subject, also. The evidence in the record in relation to values shows that those at which the real estate was taken from the Ernsts by the association were not so exorbitant or excessive that a fraudulent intent is inferrable thereform. The transactions as to the real estate bought from the Ernsts were undoubtedly voidable at the election of the association because of their fiduciary relationship to the association, but it also had the power to ratify these voidable transactions. At the instance of a creditor transactions of this character will be very closely scanned, and if there is found to be fraud sufficiently flagrant working to the financial detriment of such creditor, the transactions will be avoided and restitution compelled. A transaction between an officer of a corporation and the corporation, which is not fraudulent, may be ratified by the stockholders, notwithstanding the directors may have been disqualified from authorizing it on account of their individual interest. Robertson v. Bucklen, *supra.* While it would appear that counting the stock owned by Conrad Furst, the resolution ratifying the real estate transactions in which the Ernsts, or either of them, were vendors, could have been carried without the vote of the Ernsts' shares, yet it is the rule that the Ernst stock could be counted for the resolution, even had it been necessary to do so to carry it. 1 Marowitz on Corporations, sec. 474; 2 Cook on Corporations, sec. 662; Hart v. Ogdensburg Ry. Co., 89 Hun, 316.

And whether such ratification was before or after bill filed by a stockholder is unimportant. Majorities rule in corporation matters, and every stockholder

holds his shares subject to its recognition. A bill will be dismissed where, after its filing, the matters in controversy have been ratified in a stockholders' meeting held subsequent to the filing of the bill. Foss v. Harboute, 2 Hare 461; Nye v. Storer, 168 Mass. 53.

There was no actual fraud in the real estate transactions in dispute. But for the action of the stockholders they were voidable. Their ratification by the stockholders is binding upon them all, including Klein, and the transactions are now immune from attack by them.

Henry P. Klein having participated in the fixing of the officers' salaries, now sought to be impeached under the authority of Brown v. DeYoung, 167 Ill. 349, he is estopped from any participation in salaries so paid, which he either expressly or impliedly joined in authorizing. No other stockholders are here complaining. While other stockholders are here by intervening petition, and as they offered no proof, the case stands alone on the pleadings and proof of appellants and Klein.

As appears from recitations already made, Klein has affirmatively acquiesced in the salary allowances which he now insists are unlawful excess payments, and of which he is here seeking to compel an account. The same salaries, now objected to, were voted on his motion in the 1905 meeting, the last one at which salaries were fixed prior to the commencement of this proceeding. He retained his own salary, which finds no warrant in the by-laws, and by so doing he may be said to have added ratification to acquiescence. Furthermore, there is no evidence that the salaries paid were excessive, but, on the contrary, it appears that Leo Ernst, before his connection with the brewing association, was paid an annual salary of $14,000 by the United States Brewing Company, to which he held a similar relation and performed like service.

Boldenweck was an experienced man and evidently was entitled to the increase given him when he assumed

and discharged the additional duties of brew master.

The payment of the unearned salary to Otto Ernst on his retirement as treasurer and director was, to say the least, of doubtful propriety, but however that may be, Klein was present at the meeting at which this questionable transaction was ordered, and made no protest and took no action for years thereafter disputing the integrity of such conduct. *Laches* is imputable to him. His silence must be construed as assent, and whether legal or not, he is estopped from now contesting what was then done and afterwards carried out with his full knowledge.

When it is considered that Klein, a director, and fully advised at all times of the condition of the association, its business and finances, having superior knowledge of its workings in all its departments, and in constant intercourse with the officers, could have honestly believed frauds were being perpetrated by the management to its injury, when he increased his stock holdings from 370 shares in 1901, to 1,073 shares, which he possessed when he started this litigation, and could have so believed when he offered his stock to the Ernsts at $165 per share just before filing this bill, surely this may be regarded as cogent evidence of his satisfaction with the management of the business and the profit it was returning to its stockholders. These purchases may be held to work a ratification of the methods pursued in the conduct of its business by its officers. The Ernsts borrowed money from the brewery and so did Klein. The evidence shows that the Ernsts paid back all the principal of the loans and some interest, how much does not appear. The burden certainly rested upon Klein to substantiate his charge in relation to interest, and as he made no attempt to do so, his complaint is unavailing.

F. W. Boldenweck became a bankrupt. Whatever money he borrowed from the association and did not repay is on a par with the borrowing by the Ernsts

and Klein. The Ernsts are no more liable for Bolden-weck's indebtedness than Klein would be for the Ernsts if they had not paid. The sums were all loaned with the knowledge and implied assent of Klein, and upon principles herein laid down he is estopped to dispute the transaction. Dividends were paid, and in the whole course of the conduct of the business of the brewery it has made fair and remunerative returns in the shape of regular and substantial dividends to its stockholders, and none of its earnings have been improperly withheld. While annual dividends were less than ten per cent. on the capital stock, still the book value of the stock has been increased half a million of dollars by betterments and additions, real estate, etc., all made and acquired with the earnings of the association. On the showing made by the proofs there has been a net increase from dividends and investments netting twelve per cent. on the face value of the half million dollars of capital stock,—surely no evidence of prodigality or waste.

No relief was requested or decreed against Conrad Furst. Why appellees insisted on retaining him as a party does not appear. The chancellor should, after the hearing, have dismissed him out of the case.

There is neither proof nor contention that any of the appellees have equities superior to Klein's, or that they in any way stand on any different footing. Neither is it urged that Klein failing, they then have any standing for relief.

Appellee Frederick having voted in favor of the ratification resolutions at the stockholders' meeting November 28, 1905, is precluded from obtaining relief.

Neith bought his stock *pendente lite* and took it *cum onere*.

May and Rohn each own five shares of stock and took no part in the November stockholders' meeting of ratification.

Without passing upon the integrity of all the actions

of appellants here challenged, or deciding they are invulnerable against attack, it is sufficient to say, for reasons already given, that the door to an accounting or other relief is closed against Klein.

For the reasons indicated the decree of the Superior Court is reversed, and the cause remanded, with directions to dismiss the bill for want of equity as to all the complainants except Rohn and May, and as to Rohn and May the bill will be dismissed without prejudice to their rights, if any they have.

*Reversed and remanded with directions.*