James Dunlap, Appellant, *v.* The County of Gallatin, Appellee.

APPEAL FROM GALLATIN.

A tax is not an ordinary debt; it takes precedence of all other demands; and is a charge upon the property, without reference to the matter of ownership.

The property itself may be seized and sold, although there may be prior liens or incumbrances upon it.

The State is not bound to wait until the estate of a deceased person is administered, and then participate with other creditors in the proceeds, but may enforce payment to the exclusion of all other creditors. So of an insolvent estate in the hands of trustees.

The remedy by distress, for the collection of taxes, is not necessarily exclusive.

The opinion contains a statement of the case. The cause was heard at the July term, 1853, of the Gallatin Circuit Court, before Marshall, Judge.

J. A. McClernand, for appellant.

N. L. Freeman, for appellee.

Treat, C. J.   The act of the 28th of February, 1845, required the Bank of Illinois to make an assignment of all its real and personal estate; the real estate to be conveyed to Caldwell, Ryan, Hardin, and Dunlap; the personal estate of the principal bank at Shawneetown and the branch at Lawrenceville, to be transferred to Caldwell and Ryan; and that of the branches at Jacksonville, Alton, and Pekin, to be transferred to Hardin and Dunlap. The act made it the duty of the assignees to dispose of the property and collect the debts, and apply the proceeds to the payment of the liabilities of the institution.   On the 10th of April, 1845, the bank conveyed and transferred all of its property and effects, pursuant to the provisions of the act; and the assignees entered upon the discharge of their duties.

In May, 1849, the county of Gallatin brought an action of debt against Caldwell and Ryan, to recover the county taxes for the years 1845, 1846, and 1847, assessed on the sum of $260,000, as money loaned by the bank at Shawneetown; and judgment was rendered therein in favor of the county, for $2,377, in November, 1850.   An execution issued on the judgment was, on the 8th of March, 1851, levied on lot 1,106 in the

town of Shawneetown, on which the banking house was situated.

On the 17th of March, 1851, Caldwell and Ryan sued out a writ of error from this court, and obtained a *supersedeas* staying all proceedings on the judgment. The case was heard at the November term, 1852, and resulted in the affirmance of the judgment. See Ryan *v.* Gallatin County, 14 Illinois, 78. On the 13th of April, 1853, the county sued out a writ of *venditioni exponas*, commanding the sheriff to proceed and sell the lot levied on.

On the 4th of May, 1853, James Dunlap filed a bill in chancery against the county of Gallatin, and obtained an injunction restraining the sale of the lot. The bill alleged in substance, that in December, 1850, the Bank of the State of Missouri commenced a suit in chancery against the assignees of the Bank of Illinois, in the Circuit Court of the United States for the District of Illinois, and that a decree was entered therein in July, 1851, appointing William Thomas sole trustee to execute the trusts under the deed of assignment; that in October, 1851, the assignees conveyed to Thomas all the real estate held by them as assignees, including the lot levied on, in trust for the benefit of all the creditors of the Bank of Illinois; that on the 4th of April, 1853, Thomas sold and conveyed the lot in question to the complainant for the consideration of $7,150, which was at the time fully paid in the indebtedness of the Bank of Illinois; and that there was other real estate in the county held by Thomas as trustee, sufficient for the satisfaction of the judgment. These allegations were admitted to be true by the answer. The cause was submitted on bill and answer at the July term, 1853, and a decree was entered dissolving the injunction and dismissing the bill, and awarding the county six per cent. damages on the amount of the judgment.

It was decided in the former case, that the property held by the assignees of the Bank of Illinois was subject to taxation. That question was deliberately settled, and will not again be discussed. The only question in this case is, whether the judgment recovered against the assignees for taxes can be enforced against the real estate then held by them. It makes no difference that they have since been removed from office, and a single trustee appointed to carry out the purposes of the assignment. The trustee holds the property by the same tenure as did the assignees. He succeeds to their powers and duties. The same trusts remain to be executed. The county has the same remedy against the trustee that it had against the assignees.

Dunlap *v.* Gallatin County.

If the judgment was a lien on the real estate in the county held by the assignees, that lien was not divested by the proceedings in the United States Court. We think the judgment was a lien on such real estate, and that it may be enforced against the lot in question. This was the opinion of the court in the original case. It was there said : " Under the execution issued on the judgment, any property of the assignees as such, real or personal, may be seized as in other cases of execution." The claim of the county does not stand on the same footing with the other indebtedness of the bank. It is entitled to priority in payment. A tax is not an ordinary debt. It is levied for the support of government, and takes precedence of all other demands against the owner. It is a charge upon the property, without reference to the matter of ownership. The property itself may be seized and sold, although there may be prior liens or incumbrances upon it. The estate of a deceased person is primarily liable for the taxes that may be due from it. The State is not bound to wait until the estate is administered, and then participate with the creditors in the distribution of the proceeds. It may enforce payment to the exclusion of all other creditors. And so of an insolvent estate in the hands of trustees, under a compulsory or voluntary assignment. In this case, the property passed to the assignees for the benefit of the creditors of the bank. It became a common fund for the payment of their debts. But the assignees acquired the same subject to the right of the State to charge it with taxes. The creditors likewise acquired interests therein subordinate to this right of taxation. They are only entitled to the surplus that may remain after the payment of the taxes, and the necessary expenses of administering the assignment. The judgment was rendered for taxes assessed upon a portion of this fund, and it must first be discharged. The collector might indeed have coerced payment of the taxes, by the seizure and sale of any personal property in the hands of the assignees; but the remedy by distress is not necessarily exclusive. The assignees were legally liable for the taxes, and that liability could be enforced by action of debt. The county having obtained judgment against the assignees, and the property held by them being absolutely and primarily liable for its payment, the judgment became a lien on the real estate in question. A judgment against them in favor of an ordinary creditor of the bank would not be a lien, nor could it be enforced by execution against the property in their hands, because the property is a common security for all such creditors. Each of them has an equal interest therein, and the same right to participate in the

proceeds. These interests and rights might be defeated, by permitting one creditor to sue out execution against the property. It is a matter of no importance to these creditors, out of what portion of the property this judgment is to be satisfied. The property constitutes one entire fund, and is aggregately liable for any incidental charges upon it. The creditors can only share in what remains after the taxes and expenses are discharged. Nor is it material that the title to the real estate was in the four assignees, when the judgment was against two only. The action could only be maintained against the two, but the judgment as effectually bound the fund as would a judgment against all. The demand of the county was established against the fund, in the mode prescribed by the law under which the assignment was made. The complainant purchased the lot subject to the lien of the judgment. He had both constructive and actual notice of the judgment and levy. He has therefore no just cause to complain of the county for endeavoring to obtain satisfaction of the judgment by the sale of the lot.

The decree must be affirmed.

*Decree affirmed.*