The People of the State of Illinois, Appellee, v. Melvin L. Straus et al., Defendants. Melvin L. Straus and Argyle-Lake Shore Building Corporation, Appellants.

Gen. No. 35,699.

Opinion filed April 5, 1932. Rehearing denied April 18, 1932.

GOTTLIEB & SCHWARTZ, for appellants; ULYSSES S. SCHWARTZ, CLAUDE A. ROTH and HARRY E. SMOOT, of counsel.

HENRY M. ASHTON, for appellee; WILLIAM CAPESIUS and EDWARD M. WINSTON, of counsel.

Mr. Presiding Justice Gridley delivered the opinion of the court.

This is an appeal from an interlocutory order of the superior court of Cook county, entered October 24, 1931, appointing a receiver of certain improved premises in Chicago, in a tax foreclosure suit brought under section 253 of the Revenue Act, Cahill's St. ch. 120, ¶ 268.

The bill of complaint, filed September 17, 1931, is signed in the name of the People "by Henry M. Ashton, their attorney and solicitor," and is sworn to by him. It prays for an accounting, a foreclosure and the appointment of a receiver *pendente lite* to collect the rents and profits of the premises, "until the right to redeem said premises from any sale thereof to be made by virtue of this proceeding shall have expired, and that such rents and profits shall be applied toward the payment of the *indebtedness* and the costs of this foreclosure suit."

In the bill it is stated that the People, "upon order of the Board of County Commissioners of Cook County," respectfully represent that "the taxes levied in and for the several years of 1924, 1925, 1926 and 1927, and the taxes, penalties, interest and costs which have accrued thereon, remain and are due and unpaid" upon lots 16 and 17 in a certain subdivision (describing it) and that said taxes, etc., as shown and described in the collector's books, "are now a prior and first lien upon the property"; that the lots "are and remain forfeited to the State of Illinois upon the same description for the taxes of two or more years, to wit, the years 1924, 1925, 1926 and 1927"; that the taxes for the year 1928 have been paid; that the full amount now due and unpaid upon the lots for said taxes, penalties, etc., including said forfeitures for said years, "is the sum of $193,838.88 (not including taxes for the year 1929)"; that the present owners of the property

are the Argyle-Lake Shore Building Corporation and George K. Spoor; that on November 1, 1922, title to the property, upon which an apartment building was erected, was in the Aquitania Building Corporation, and that on that day it executed a trust deed to Melvin L. Straus, as trustee, securing a bond issue of $1,200,000 on lot 17; that George K. Spoor is the owner of lot 16; and that he and members of his family are the owners of a majority of the stock of both corporations. And it is alleged, upon information and belief, that both of said corporations are insolvent. And it is further alleged that Melvin L. Straus, as trustee in the trust deed, has filed a bill in the circuit court (case No. B–220251) to foreclose said trust deed,—stating that said corporations are in default as to said bond issue; that the City of Chicago and the county of Cook are wholly without adequate funds to pay their running expenses, so that teachers in the Chicago schools must go without their pay, and that a financial crisis exists in the city and county, due to the withholding of taxes by property holders; that the same condition exists as to other taxing bodies in the county, and that "it would be inequitable to permit the owners of said lots to collect the rents and profits from said building during the pendency of this proceeding without compelling them to pay such rents and profits towards the satisfaction of the claim of the State of Illinois"; that the owners of the building or some of the defendants, after paying all operating expenses, retired bonds in the amount of $206,250, from November 1, 1925 to November 1, 1930, and from November, 1922 to November, 1930, also paid out of the earnings of the building the sum of approximately $500,000, or a total of $706,250, and that "notwithstanding said income during the years 1924, 1925, 1926 and 1927, the owners or some of them permitted the property to be forfeited for nonpayment of taxes"; that according to

the records the owner of the property for several years has been the Argyle-Lake Shore Building Corporation, that neither it nor George K. Spoor is now in possession, but that "possession has been surrendered to Melvin L. Straus, trustee under said trust deed, and either he or his agents are collecting the rents for the benefit of the bondholders and are not paying the taxes due to the People"; that the building on lot 17 consists of 83 apartments, all occupied and producing a gross income of approximately $15,000 a month; and that "if this cause is prosecuted to a decree and the property offered for sale, the purchaser at such foreclosure sale would be required to deposit the full amount of said bill, and, in case redemption were made within two years as provided by law, he would receive the money paid out by him plus interest thereon at the legal rate, and that for this reason there is *no probability,* if the property were exposed for sale or foreclosure, that it would be bought by anyone, and the money due as taxes would not be paid to the public treasurer, and *therefore* complainant states that the property *is insufficient security* for the amount of taxes and penalties due thereon."

In the joint and several answer of three of the defendants, Argyle-Lake Shore Building Corporation, S. W. Straus & Co., and Melvin L. Straus, as trustee, filed October 1, 1931, they denied some of the allegations of the bill, and alleged that said Ashton was without the right or power to represent the People in the present litigation or to file the present bill, and that he had not received any proper authority from the board of commissioners of Cook county, by its resolution of May 22, 1931, or otherwise, to institute or prosecute the suit in the name of the People. On the same day they filed a written motion, accompanied by certain affidavits, that the bill be dismissed. Subsequently, and after George K. Spoor had filed his an-

swer to the bill, there was a hearing upon defendants' motion to dismiss and upon complainant's motion for the appointment of a receiver *pendente lite.* During the hearing there was read an affidavit of said Ashton, as was also the said resolution of the board of county commissioners of May 22, 1931, and the said Straus, as trustee, made a written tender as to future payment of taxes by him.

On October 24, 1931, the court, after considering the sworn bill of complaint, the answers and all affidavits, and having heard arguments of counsel, entered the order appealed from, wherein Frank J. Spencer was appointed receiver of the premises until the further order of the court, upon his filing within 2 days a bond with surety in the sum of $50,000. It was further ordered that said receiver, as to all funds collected by him, keep the same "in a separate account as trust funds"; that he have full power and authority to operate and manage the premises, to find tenants, to make leases, to collect all rents, to keep the premises insured and in good repair, etc.; and that "for good cause shown the complainant herein be excused from filing a bond."

In the order the court made the following findings: (1) That it has jurisdiction of the subject matter and of the parties; (2) that the board of commissioners of Cook county "has the right to bring this suit in the name of the People" and that it "had the right to employ an attorney, *other than the State's Attorney of Cook county,* to represent them in this suit"; (3) that upon the real estate in question "there is and has been since 1923, an apartment building consisting of 83 apartments, known as the Aquitania Building, situated at 832 Argyle street, Chicago, and *valued at, to-wit, $800,000";* (4) that according to the allegations of the bill, the taxes for the years 1924, 1925, 1926 and 1927 remain unpaid on the property, so that "there is

due in taxes alone, exclusive of penalties, for the years enumerated, the sum of $112,611.99, and that the total sum of taxes and penalties due on said property amounts to $193,838.88''; (5) that said taxes, together with all penalties, interests and costs, ''are a prior and first lien on the property''; (6) that complainant ''has a prior and first lien on all rights and privileges belonging to or in any wise pertaining to said real estate and building, including the right of the owner, or party in possession, to collect rent or income from said building, and that the income from said building is subject to complainant's first lien for the unpaid taxes''; (7) that the owner of the building, Argyle-Lake Shore Building Corporation, has surrendered possession of it to said Melvin L. Straus, as trustee, who is now collecting the rents and operating the building; (8) that said Straus is the same person who is named as trustee in a trust deed made on November 1, 1922, securing a bond issue on the building of $1,200,000; and that ''it is necessary for the proper preservation of the premises and for the benefit of all liens and bondholders that a receiver be appointed for the premises.''

In said resolution adopted by the board of commissioners of Cook county on May 22, 1931, it is stated *inter alia* that the statutes of the State impose upon the board the duty of collecting taxes for the taxing bodies within Cook county; that upwards of $16,500,000 are now due in taxes on real estate in the county that has been forfeited; that the forfeited property is worth much more than the accumulated taxes and penalties; that during the past few months the number of forfeitures for nonpayment of taxes has greatly increased and the work of their collection has multiplied, ''thus creating an emergency situation with reference to revenue''; that the regular appropriation for the current year to the State's attorney ''is en-

tirely inadequate to enable him to defray the costs of performing the necessary work contemplated by action of this board''; and that in order to collect the taxes now due on forfeited property ''a great deal of work is necessary, which can only be performed by someone especially familiar with the subject and devoting undivided time to that purpose.'' It is then ''resolved'' that said Ashton, an attorney at law, ''be retained and employed to prosecute foreclosure suits and other suits deemed desirable to collect the revenue now due the State and other taxing bodies from forfeited real estate in Cook county,'' and that he ''is authorized and empowered for and in behalf of and to represent the People of the State of Illinois and the County of Cook in all such suits as their attorney and solicitor.'' The compensation to be paid to Ashton for said work is then set forth at length, and it is further stated that the contract with him ''shall be effective as of May 15, 1931, and shall terminate on November 30, 1932, unless renewed.'' And it appears from the journal of the board's proceedings that, after the resolution had been adopted, Ashton accepted the terms of the resolution and ''stated that he would proceed at once with the work.''

In the written tender of Melvin L. Straus, as trustee, he states that, pursuant to his offer heretofore made to the board of commissioners, ''he will pay, to apply upon the taxes referred to in complainant's bill, the sum of 80 per cent of all moneys which he now has in his possession as trustee, reserving the balance of 20 per cent as a necessary operating fund needed for the operation of said property''; that he will likewise apply on taxes ''80 per cent of the net future sums received by him from the operation of the property, reserving therefrom 20 per cent for an operating fund, or, if such operating fund shall appear to be too large, then only such sum shall be reserved as the court may

find to be proper, the balance to be applied on taxes'';
and that he, as trustee, ''offers to the court and to
complainant the sum of $25,419.06, representing 80
per cent of the moneys he has on hand, and tenders
herewith a check for that amount; and, in addition, will
give bond, in such reasonable amount as may be deter-
mined by the court, to account to this court and to
complainant for all moneys which may come into his
hands by reason of the operation of the property, in
lieu of the appointment of a receiver.''

In urging a reversal of the order appealed from, it
is first contended by appellants' counsel in substance
that, as Ashton was neither the State's attorney of
Cook county, nor the attorney general of Illinois, and
as it does not appear that the State's attorney was ill
or incapacitated to act, he (Ashton) had no right or
authority to represent the People in the present suit,
and that the resolution of the board of commissioners
of Cook county of May 22, 1931, employing him for the
purposes therein stated, is ultra vires and void. Op-
posing counsel on the contrary contend that the board
had the right and power to employ an attorney or
solicitor, other than the State's attorney, to commence
and prosecute such a tax foreclosure proceeding as the
present one, which is brought under section 253 of the
Illinois Revenue Act, Cahill's St. ch. 120, ¶ 268, as
amended in 1881.

Prior to the amendment the section read: ''The
taxes assessed upon real property shall be a lien there-
on from and including the first day of May in the year
in which they are levied, until the same are paid.''
(Hurd's Stat. 1880, ch. 120, p. 912.) By act of the
legislature, approved May 30, 1881 (Laws 1881, p. 130),
the section was amended to read as follows (and re-
mains the same today, Cahill's St. 1931, ch. 120, ¶ 268,
p. 2359):

''§ 253. The taxes upon real property, together with
all penalties, interest and costs that may accrue there-

on, shall be a prior and first lien on such real property, superior to all other liens and incumbrances, from and including the first day of May in the year in which the taxes are levied until the same are paid; which lien may be foreclosed in equity, in any court of competent jurisdiction, in the name of the People of the State of Illinois, whenever taxes for two or more years, upon the same description of property, shall have been forfeited to the State, and may be sold under the order of the court by the person having authority to receive State and county taxes, with the same notice to interested parties and right of redemption from said sale as is now provided by law, and in conformity with sections four (4) and five (5) of article IX, of the Constitution of this State. In proceedings to foreclose the tax lien on any real property, the amount due on the collector's books against the said property shall be *prima facie* evidence of the amount of taxes against the real property. When any taxes are collected in any such foreclosure proceedings, they shall be paid to the county collector, to be distributed by him to the respective authorities entitled thereto.''

In section 5 of chapter 14, it is in part provided (Cahill's St. 1931, ch. 14, ¶ 5, p. 159):

''§ 5. The duty of each State's attorney shall be—

''*First.* To commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in any court of record in his county, in which the People of the State or county may be concerned.

''*Second.* To prosecute . . . all actions and proceedings for the recovery of debts, revenues, moneys, fines, penalties and forfeitures accruing to the State or his county. . . .

''*Eleventh.* To appear in all proceedings by collectors of taxes against delinquent tax-payers for judgments to sell real estate, and see that all the necessary preliminary steps have been legally taken to make the judgment legal and binding.''

In section 6 of said chapter 14, Cahill's St. ch. 14, ¶ 6, it is provided:

"§ 6. Whenever the State's attorney is sick or absent or unable to attend, or is interested in any cause or proceeding, civil or criminal, which it is or may be his duty to prosecute or defend, the court in which such cause or proceeding is pending shall request the Attorney General to prosecute or defend such cause or proceeding, and in the event the Attorney General is sick or absent or unable to attend, or is interested in any such cause or proceeding, civil or criminal, which he may be thus requested to prosecute or defend, or when the Attorney General fails or declines for any cause to respond to such request, the court in which such cause or proceeding is pending may appoint some competent attorney to prosecute or defend such cause or proceeding; and the attorney so appointed shall have the same power and authority, in relation to such cause or proceeding, as the Attorney General or State's attorney would have had if present and attending to the same."

In section 33 of chapter 34, entitled "Counties," it is provided (Cahill's St. 1931, ch. 34, ¶ 36, p. 838):

"§ 33. It shall be the duty of the county boards of each of the counties of this State to take and order suitable and proper measures for the prosecuting and defending of all suits to be brought by or against their respective counties, and all suits which it may become necessary to prosecute or defend to enforce the collection of all taxes charged on the State assessment."

In section 230 of the Revenue Act (Cahill's St. 1931, ch. 120, ¶ 245, p. 2355) it is in part provided:

"§ 230. The county board may, at any time, institute suit in an action of debt in the name of the People of the State of Illinois in any court of competent jurisdiction for the whole amount due for taxes and special assessments on forfeited property; or any

county, city, town, school district or other municipal corporation to which any such tax or special assessment may be due, may, at any time, institute suit in an action of debt in its own name, before any court of competent jurisdiction, for the amount of such tax or special assessment due any such corporation on forfeited property, and prosecute the same to final judgment. The county board may also, at any time, institute suit in an action of debt in the name of the People of the State of Illinois, in any court of competent jurisdiction, against any person, firm or corporation, for the recovery of any personal property tax due from such person, firm or corporation. . . .''

In *Ward v. City of Alton and County of Madison,* 23 Ill. App. 475 (a case arising after the amendment of 1881 of said section 253), plaintiff, a clerk of a court, claimed certain costs were due to him by reason of certain tax foreclosure suits which had been commenced and subsequently dismissed. It was held *inter alia* (1) that the State's attorney is the proper officer to file the bill to foreclose a tax lien under said section 253, but that the county board also has the authority to institute proceedings to enforce such lien, and (2) that, whether such proceeding is instituted by the State's attorney or the county board, it must be in the name of the People, and that, if it is unsuccessful, neither the People nor the county can be required to pay costs. In the course of the opinion, after commenting upon section 253 and upon the second paragraph of section 5 of chapter 14 of our statutes, relative to the duties of State's attorneys (above quoted), the Appellate Court for the fourth district said (pp. 478–9):

''While the primary duty of prosecuting such action (a tax foreclosure suit) is cast upon him (the State's attorney), the collection of the public revenues is of such vast importance to the State and all its political subdivisions, that the Legislature has seen proper to

also impose the duty upon the County Board of taking all proper measures that may be necessary to enforce the collection of all taxes charged upon the State assessment. Sec. 33, chap. 34, R. S. Under this provision, if the State's attorney should neglect to perform his duty in foreclosing such lien, the County Board could order such proceeding commenced by him, and if for any reason he could not properly prosecute it, measures could be taken by the Board to call into exercise the power of the court to appoint some other attorney to prosecute such case. But whether commenced by the State's attorney upon his own motion, or by order of the County Board, the bill must be filed in the name of the People of the State of Illinois as complainants, for such is the clear command of the statute; . . ."

In *Ottawa Gas Light & Coke Co. v. People,* 138 Ill. 336, an action was commenced, by virtue of section 230 of the Revenue Act, Cahill's St. ch. 120, ¶ 245, in the circuit court of LaSalle county, in the name of the People, to recover from the company the sum of $3,043.89, for taxes claimed to be due and unpaid on its capital stock and personal property for the years 1881 to 1887, inclusive. The declaration was signed "M. T. Moloney, County Attorney." The company interposed a motion, supported by affidavits, to dismiss the suit because instituted without authority of law and by an attorney not authorized by law to begin or prosecute the same. It appeared from the affidavits that Moloney was not the State's attorney of LaSalle county but that one George Blake was such official; that the court records failed to disclose any appointment of Moloney to prosecute the cause; that Blake as State's attorney had neither been requested to prosecute it nor had he been sick, absent or unable to attend to it; and that Blake was not interested in the subject matter of the suit. It was con-

tended that the action was one which the State's attorney alone, in the absence of disabilities, was authorized to begin and prosecute, and that Moloney had no legal authority so to do. The affidavit of Moloney, however, disclosed that, by resolution of the county board, he had been authorized and directed to begin and prosecute the suit. The motion to dismiss was denied. On appeal to the Supreme Court it was urged that the circuit court erred in not granting the motion, but the Supreme Court held that the ruling was correct. In discussing the question the court said (p. 343):

"It is contended, however, that while the authority of the county board to cause the institution of suit for unpaid taxes is ample, it is not at liberty to select counsel, but must act by and through the State's attorney of the county, and that if the State's attorney is disqualified, by interest, sickness, absence or other inability, the court alone can appoint another attorney to act. (The court then refers to sections 5 and 6 of chapter 14 of the statutes, above quoted.) It would be perfectly competent for the county board to direct the State's attorney to institute suits to recover delinquent and unpaid taxes, and to prosecute the same, and in such case it would be the manifest duty of the State's attorney to act; and if, in obedience to such direction, he should institute a suit, and thereafter become disqualified from acting, the court in which the cause was pending might appoint another competent attorney to act in his stead. We are not disposed, however, to hold that the county board is, by the statute defining the duties of the State's attorney, denied the power and authority to select and empower any competent attorney to represent the People in beginning and prosecuting suits to recover delinquent taxes. Notwithstanding the statute last referred to, it is manifest that the State's attorney could not, of his own motion, begin and carry forward proceedings of this character.

Whether or not resort shall be had to proceedings at law to recover of property owners the overdue and unpaid taxes levied thereon, rests in the discretion of the county board; and we have no doubt that under the general power of the county board, as the fiscal agent of the county, it has the inherent right to direct the course of the proceeding, and select the persons and agencies through whom it will act.''

We do not find that in any subsequent decisions our Supreme Court has departed from the decision in this *Ottawa Gas Co.* case. Appellants' counsel, however, contend that the decision has *in effect* been overruled by the cases of *Stevens v. County of Henry,* 218 Ill. 468, 475–6, and *Fergus v. Russel,* 270 Ill. 304, 342. We cannot agree with the contention, notwithstanding the holdings of the Appellate Court for the third district in *Abbott v. County of Adams,* 214 Ill. App. 201, 206–7, where it is said in part: ''What is said in *Gillett v. Board of Sup'rs Logan Co.,* 67 Ill. 256, . . . . *Ottawa Gas Light & Coke Co. v. People,* 138 Ill. 336, . . . in apparent conflict with the views here expressed, we understand to be overruled by *Stevens v. Henry County, supra,* and *Fergus v. Russel, supra.*'' These two cases, in our opinion, are much different from the *Ottawa Gas Co.* case and do not in terms or in effect overrule the holdings in the last named case. And we agree with what the attorney general of this State said in an opinion rendered by him on May 22, 1928 (Opinions Attorney General, 1928, pp. 240–1), in answer to the question ''May the county commissioners employ legal assistance other than the State's attorney to collect delinquent taxes?'' viz.:

''An examination of the cases of *Abbott v. County of Adams, supra, Stevens v. Henry County, supra,* and *Fergus v. Russel, supra,* shows that neither of these cases are the same as *Ottawa Gas Light Co., supra.* Inasmuch as the Supreme Court has not reversed the

rule stated in the case of *Ottawa Gas Light Co., supra,* it is my opinion that the county board may employ a competent attorney other than the State's attorney to represent the People in beginning and prosecuting suits to recover delinquent taxes under the provisions of section 230 of the Revenue Act, . . . ''

In view of the statutes above quoted, the holdings in the *Ottawa Gas Co.* case, the allegations of complainant's bill, and the resolution of the board of commissioners of Cook county employing Ashton, we are of the opinion that appellants' counsels' first contention is without substantial merit and that the superior court did not err in refusing appellants' motion (made and considered at the same time as complainant's motion for the appointment of a receiver *pendente lite*) to dismiss the bill.

It is secondly contended by appellants' counsel that the court was without power to enter the order appealed from, appointing a receiver *pendente lite,* with the powers mentioned. Counsel argue that neither by section 253 of the Revenue Act, Cahill's St. ch. 120, ¶ 268, nor in any other sections of that act is authority given for such an appointment in a tax foreclosure proceeding.

We have hereinabove set forth section 253, as it existed prior to the amendment of 1881. It will be noticed that no provision was made therein for the *foreclosure* of the given tax lien. In *People v. Biggins,* 96 Ill. 481, decided in November, 1880, it appears that a bill in equity in the name of the People was filed in the circuit court of Madison county to foreclose the tax lien given by the statute on certain land for unpaid taxes for the years 1871 to 1878, inclusive, amounting to $9,000; that Biggins' demurrer to the bill was sustained and the bill dismissed for want of equity; and that the Appellate Court for the fourth district affirmed the decree. On further appeal to the Supreme

Court the judgment of the Appellate Court was affirmed. From the opinion of the Supreme Court (p. 482) it further appears that a single question was presented by the record for decision, and that was "Whether a court of equity has jurisdiction of a proceeding by bill, for the collection of taxes delinquent on real estate," by virtue of said section 253 as it then existed. This question the court answered in the negative. And the court made the following holdings in substance: (a) That the tax lien given by the section is purely *legal* in its character, the creature of the statute and *not arising upon contract:* (b) that it can *only* be enforced in the mode provided by the law of its creation; (c) that if the revenue law be defective in respect to the remedy provided for enforcing such a lien, "it is the duty and business of the *legislature* to amend it"; (d) that the courts "cannot make, but can only construe, laws after they are made by the legislature"; and (e) that "the officers of the State, in the collection of revenue, are as much bound to observe the law and proceed in the mode pointed out by the statute as an individual is required to observe the law in the enforcement of any right." And the court said in conclusion (pp. 486–7): "If it is wise and proper that our revenue should be collected by bill in chancery, which we by no means concede, then the legislature should confer the jurisdiction upon that court; but until that is done, we perceive no ground upon which we can hold that resort can be had to that tribunal." (See, also, *Gauen v. Moredock & Ivy Landing Drainage Dist.,* 131 Ill. 446, 462.)

In *Clark v. Zaleski,* 253 Ill. 63, 76, it is said: "At the next session of the legislature after the decision in the *Biggins* case (*supra*), section 253 was amended so as to provide, as said section now does, for the *foreclosure* of such tax lien in equity. (Laws of 1881, p. 130.) After the section was amended another bill was filed

against Biggins, and a decree foreclosing the lien was affirmed by this (Supreme) court in *Biggins v. People,* 106 Ill. 270.'' In this second *Biggins* case, it was decided that section 253 (making not only the taxes, but also ''all penalties, interest and costs'' a lien on the land) did not create a new lien, but that it limited the remedy *in equity* for the collection of taxes by foreclosure to cases where the ''taxes for two or more years, upon the same description of property, shall have been forfeited to the State.''

It will be noticed that section 253 as amended, in addition to providing for the foreclosure in equity of the tax lien under the mentioned conditions, also provides for a *sale* ''under the order of the court by the person having authority to receive state and county taxes, with the same notice to interested parties and right of redemption from said sale as is now provided by law, and in conformity with sections four (4) and five (5) of article IX of the Constitution of this State.'' Nowhere in the section, or in any other section of the act, is provision made for the appointment of a receiver *pendente lite* in aid of the collection of taxes, etc., due. In *People v. Sears,* 344 Ill. 189, it is said (p. 191) : ''The obligation of the citizen to pay taxes is purely a statutory creation, and taxes can be levied, assessed and collected *only in the mode* pointed out by express statute.'' And the court further said (p. 193) : ''Such statutes imposing a tax, in case of doubt, are construed most strongly against the government and in favor of the citizen.'' Our attention has not been directed to any decision of our Supreme Court, holding that a receiver *pendente lite* may be appointed in a tax foreclosure proceeding, and we have found none. There are decisions in somewhat analogous cases under special statutes to the contrary. In *Stone v. Tyler,* 173 Ill. 147, 155, it is said : ''The Mechanics' Lien Law of 1874, together with the amendments thereto passed

in 1887, did not authorize the appointment of a receiver. In the absence of any statutory provision authorizing it to be done, the complainant, in an action for the foreclosure of a mechanic's lien, is not entitled to a receiver of the rents and profits of the property *pendente lite.*" In *State Investment & Insurance Co. v. Superior Court of San Francisco,* 101 Cal. 135, 35 Pac. 549, it is decided by the Supreme Court of California, in an action brought by the People against the Investment Co. under certain sections of the Political Code, that the trial court on decreeing the dissolution of a corporation has no power to appoint a receiver, or assume control of its affairs. The court says (p. 553) : "The jurisdiction of the superior court to decree a dissolution of any corporation exists only by virtue of statutory authority. It does *not* possess this authority *by virtue of its inherent general jurisdiction in equity* (citing cases), either at the suit of an individual . . . or at the suit of the State . . . ; and, as its jurisdiction is derived from the statute, it is limited by the provisions of the statute, both as to the conditions under which it may be invoked and the extent of the judgment which it may make in the exercise of this jurisdiction." In *Coquard v. National Linseed Oil Co.,* 171 Ill. 480, 485, it is said: "Courts of chancery have no general power to appoint receivers of corporations and can only appoint them where expressly authorized by the statute." In *Young v. Rutan,* 69 Ill. App. 513, 517, it is said: "It is no slight matter for a court of chancery to lay its hands upon large business enterprises, take them out of the control of capacity and experience, and charge them with expenses and commissions." In *People v. Cant,* 260 Ill. 497, 500, a tax foreclosure proceeding, it is said that said section 253, as amended, "enlarged the jurisdiction of equity so as to include the *foreclosure* of tax liens"

and that "the usual practice in enforcing liens is to decree a *sale,* for cash, to the highest bidder."

Counsel for the People, in their argument on this branch of the case, seem to treat the liability of the appellant corporation for the taxes in question as if it were an indebtedness arising upon a contract. Such is not the case. In *Loeber v. Leininger,* 175 Ill. 484, 490, it is said: "A tax is not a debt, in the ordinary sense of that term. It is an exaction or forced contribution from property demanded by the taxing power or sovereignty for the purpose of enabling the government to execute and discharge its functions. It is to be collected in Illinois, not by the ordinary actions at law, but by remedies specifically provided by the statute." (See also *Dunlap v. County of Gallatin,* 15 Ill. 7, 9; *Jack v. Weiennett,* 115 Ill. 105, 109.) In *Lane County v. Oregon,* 7 Wall. (U. S.) 71, 80, the court, quoting the language of the Supreme Court of New Jersey in a cited case, says: "A tax, in its essential characteristics, is not a debt nor in the nature of a debt. A tax is an impost levied by authority of government upon its citizens, or subjects, for the support of the State. It is not founded on contract or agreement. It operates *in invitum.* . . ."

After considering the quoted statutes, the cited decisions and particularly the holdings and principles enunciated in the *Biggins* case (96 Ill. 481), we are of the opinion that appellants' counsels' second contention is sound, and that the chancellor was without statutory power or authority to enter the order appealed from, appointing the receiver. Shortly after the decision had been made in said *Biggins* case our legislature amended section 253, enlarging the jurisdiction of equity so as to include the foreclosure of tax liens. The law making body, however, made no provision for the appointment of a receiver pending such foreclosure proceedings. As said in the *Cant* case, *supra* (p. 499),

the section as amended "contained no procedural directions, except that the same notice and right of redemption as were then required by law, and conformity with sections 4 and 5 of article 9 of the constitution, were required." If the legislature had deemed it wise that, pending such foreclosure proceedings, the court might appoint a receiver, it could easily have so provided by appropriate language.

Other contentions are made by appellants' counsel as grounds for a reversal of the order appealed from. One is that it does not sufficiently appear from the allegations of the bill or from the court's findings that the amount of the taxes due cannot be realized from the foreclosure sale. It is undisputed that the value of the premises is about $800,000, while the amount of the taxes due, including penalties, is about $194,000. And counsel in support of the contention cite the case of *Chicago Real Estate Loan & Trust Co. v. People,* 104 Ill. App. 290, 293–4, where an order of the circuit court of Cook county, appointing a receiver *pendente lite* in a tax foreclosure proceeding, was reversed. While counsels' contention is not without force, still we deem it unnecessary to pass upon it or upon their other contentions.

Our conclusion is that the interlocutory order of the superior court of October 24, 1931, appointing Frank J. Spencer as receiver of the premises, etc., should be reversed and it is so ordered.

*Reversed.*

Kerner and Scanlan, JJ., concur.