WILLIAM H. WEBER

*v.*

JAMES BAIRD, Town Collector, *et al.*

*Opinion filed February 17, 1904—Rehearing petition stricken April 6, 1904.*

1. TAXES—*it is the duty of board of review to cause assessment books to be changed.* Under the statute, where the board of review makes a change in an assessment it is its duty to cause the assessment books to be changed to correspond with its action and show the record thereof.

2. SAME—*it is presumed the board of review caused assessment books to be changed.* It will be presumed that the board of review caused the assessment books to be changed to correspond with its action in changing an assessment, in the absence of anything showing the contrary.

3. SAME—*the board of review cannot arbitrarily fix assessment.* The board of review cannot arbitrarily fix an assessment, but must, in case an assessment is increased, cause the assessment books to show the reason for such increase, either by the re-valuation of scheduled articles, or by listing, classifying and valuing property claimed to be owned by the tax-payer but omitted from schedule.

4. SAME—*valuation of property cannot be reviewed by the courts.* The valuation fixed by the board of review upon property cannot be reviewed by the courts upon the ground that it is excessive, in the absence of fraud or want of jurisdiction.

5. SAME—*equity may review decision of the board of review in assessing omitted property.* A court of equity may review the decision of the board of review in assessing omitted property, provided the com-

plainant produces the record of the board showing that the increase in his assessment was in fact caused by the assessment of property claimed to be owned by him but omitted from his schedule.

6. SAME—*tax-payer must produce record of board of review.* A taxpayer cannot enjoin the collection of a tax upon an assessment increased by the board of review by merely denying that he possesses any property other than that which he has listed, but must produce the record of the board of review, from which its action must be determined.

7. SAME—*effect where board does not enter its decision on assessment books.* If the assessment books fail to show the action of the board of review, or if, in case of the assessment of omitted property, the kind and class of such property are not shown on the books, the assessment is invalid unless such omission is in some way cured.

APPEAL from the Superior Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding.

THORNTON & CHANCELLOR, and ARMAND F. TEEFY, (JAMES DEWITT ANDREWS, of counsel,) for appellant.

EDWIN W. SIMS, County Attorney, and WM. F. STRUCKMANN, (FRANK L. SHEPARD, of counsel,) for appellees.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The assessment of the personal property of the appellant for taxation in the year 1901 was increased by the board of review of Cook county from a total full value of $1430, as assessed by the board of assessors, to the sum of $50,000, and taxes were extended against the appellant accordingly. He filed this his bill in chancery to enjoin the collection of the taxes extended upon the excess of an assessment above $1430.

In the bill appellant alleged that on April 23, 1901, he filed with the board of assessors of Cook county a sworn schedule of all personal property owned and controlled by him on April 1, 1901; that said schedule was sworn to by him before a deputy assessor and accepted by the board of assessors, who assessed said personal property at the sum set forth in said schedule, $1430; that he was afterwards notified to appear before the board of review

and show cause why said assessment of $1430 should not be increased; that he did so appear and verified the correctness of said schedule, and informed the board of review that he did not own, nor did he have in his possession or control, any other personal property subject to taxation than that specified; that he was given to understand by said board of review that the amount of said schedule would not be disturbed and would be accepted by said board of review, and that he retired from said board of review believing that said assessment would not in any manner be increased; that he afterward noticed in the public press that his assessment had been fixed at the sum of $50,000; that he thereupon filed a protest with the board of review and demanded a full public hearing; that he was not the owner of $50,000 worth of property, and that the amount of said assessment was ridiculous, absurd, outrageous, inequitable and unjust; that upon demanding to be heard of and concerning said assessment, he was informed by a member of the board of review before whom the complainant appeared in connection with the assessment, that he would not accord the complainant any hearing upon the subject, and that he did not care what statements the complainant made in reference to the personal property owned by the complainant; that he (the member of the board of review) was not bound to and would not believe said statements, and then and there refused to hear the complainant any further or to fix any time at which the complainant could be heard; that said assessment is unjust in every particular; that the complainant is not the owner of any property other than that scheduled by him, and that said sum of $50,000 is fraudulently excessive and should be reduced to the sum of $1430.

Answer was filed admitting that the board of assessors found the full value of complainant's property subject to assessment for said year to be the sum of $1430, and assessed the same at one-fifth of said amount and

delivered the assessment so made to the board of review; that complainant was notified to appear and show cause why his assessment should not be increased, and that he did appear and was heard fully; denying that complainant was informed by the said board of review or by any one that no increase would be made; alleging that thereafter the board, from information derived from the complainant at such hearing and from information derived from other sources, and its own knowledge of the subject, increased the valuation to the sum of $50,000 and assessed the same at the sum of $10,000, and that the same was extended upon the collector's warrant, together with the taxes based thereon, for the sum of $554.30, and the same delivered to the town collector for collection; denying that the assessment made by the board of review is unauthorized, illegal, excessive, inequitable or fraudulent; denying that the full value of complainant's personal property for the year 1901 did not exceed $1430, but alleging it far exceeds that sum in value.

The cause was submitted to the court on the sworn testimony of appellant, together with a certified copy of the schedule or list made by appellant of his personal property subject to taxation for the year 1901, which he filed with the board of assessors and which schedule the board of assessors returned to the board of review. The schedule was verified by the oath of the appellant in due form as required by the statute. The statement of appellant's property liable to assessment was given in said schedule as follows:

| (1) | (2) | (3) | (4) |
| No. | FULL, FAIR CASH VALUE. | QUANTITY AND QUALITY. | ITEMS OF PROPERTY. |
| | 50.00 | | Carriages and wagons. |
| 4 | 75.00 | | Watches and clocks. |
| 1 | 15.00 | | Sewing or knitting machines. |
| 1 | 90.00 | | Pianofortes. |
| | 150.00 | | Gold and silver plate. |
| | 50.00 | | Diamonds and jewelry. |
| | 1,000.00 | | Household or office furniture, |
| | Total...,...1,430.00 | | |

The testimony of appellant was, in substance, as follows: "My business is that of a manufacturer of wagons. I signed and swore to said schedule and filed the same, and it contained a true list of all of my personal property of every kind, and the valuations of the same as therein set forth are the full, fair cash values of said property on that date. The full, fair cash value of all personal property owned or controlled by me on the first day of April, 1901, did not exceed $1430. I got notice to appear before the board of review. I went there. Mr. West [a member of the board of review] questioned me about my return and said it was reported I was rich. I told him, 'That is all I have got, and I should like to see anybody saying to the contrary, and would be able to explain that he was mistaken.' Mr. West questioned as to what I had. He put different questions to me. I forget now just what they were. I told him the schedule showed all the property that I had which was taxable."

It will be observed there is nothing in his testimony in support of the allegations of his bill that his schedule would be accepted by the board, and that he understood that the board was satisfied the schedule contained all property owned by him and subject to assessment. It does not appear with certainty whether the increase in the assessment complained of resulted from the conclusion of the board of review that the property mentioned in the schedule had been undervalued and that it was in fact of the value of $50,000, or whether the board of review ascertained and determined that appellant owned personal property subject to be assessed other than that contained in the schedule, and valued and assessed such other property. We would infer from the testimony of appellant the increase was not caused by a re-valuation of the items of property appearing in his schedule.

The board of review possessed power, under the first subdivision of section 35 of the Revenue act, (4 Starr &

Cur. Stat. chap. 120, par. 109, p. 1117,) to assess all property of the appellant subject to assessment which had not been assessed by the board of assessors, if any, and under the other provisions of the section the board had power to increase the valuation placed by the board of assessors on the property described in the schedule made by the appellant. Section 37 of the act (4 Starr & Cur. Stat. par. 112, p. 1119,) provides: "Whenever the board of review shall decide to reverse or modify the action of the supervisor of assessments or board of assessors, or county assessor, or the assessment in any case, or to change the list as completed, or the assessment or description of any property in any manner, they shall cause the changes to be made at once and entered upon the assessment books." Under this section it became the duty of the board to have such changes made on the assessor's books as would show the action taken by them. If the board of review determined that the valuation placed by the board of assessors on any one or more of the articles or classes of property listed by appellant in the schedule was too low, it became the duty of the board, under said section 37, to fix and determine the true cash value of such property, and to change the valuation of such article or class of property in the appropriate column in the assessor's books to an amount which, in the judgment of the board of review, represented the true value of such article of property or class of property owned by the appellant. If the board determined that the appellant was the owner of property not included in the description of any of the classes of property specified in the schedule made by him but falling within other classes of taxable property, it had power to ascertain and determine the value of such omitted property, to class it in compliance with the provisions of section 35 of the Revenue act, and order the assessment to be so changed on the assessor's books as that such omitted property would appear for taxation on the assessment books in

the appropriate column in such assessor's books pre-
pared for property of that nature or class.

The record of the decision of the board of review up-
on the hearing of a charge that a tax-payer has property
liable to assessment other than such as is contained in
the schedule, or that the property listed in the schedule
is of greater value than that fixed by the board of as-
sessors, is made by entering the same on the assessment
books, and in the proper column prepared in that book
for the assessment of property of the nature and kind
as that which, in the opinion of the board, had been omit-
ted. The board cannot decide that a tax-payer shall pay
taxes on an amount arbitrarily fixed by the board. The
board has power to assess property, and has no power
to order that an assessment be entered against the per-
son of a tax-payer. It is to be presumed the board of
review performed its duty, and that there is, therefore,
a record on the assessment book for the year 1901 show-
ing the action of the board and specifying the property
which was assessed to the appellant. But the assess-
ment book was not produced in evidence nor do we find
in the record any reference whatever to it. We, there-
fore, can know no more from this record than that the
total personal property assessment of the appellant was
increased either by an increase made by the board in the
value of the articles listed by him as liable to taxation,
or by the assessment to him by the board of other prop-
erty not mentioned in the schedule but which the board
decided was owned by him on the first day of April, 1901,
and was subject to assessment for taxation. If the in-
crease was the result of the investigation made by the
board of review as to the true value of the property in-
cluded in the schedule as made by the appellant, the de-
cision of the board as to the real value of such property
cannot be reviewed by the court on the ground, merely,
that the value fixed by the board is too great. "The as-
sessor and boards for review are invested with the only

power to fix valuations, and their decisions can only be
questioned for fraud or want of jurisdiction. * * * But
while it is not the duty of courts, nor within the power
of equity, to supervise the honest judgments of statutory
officers as to valuations, equity will interfere if the val-
uations are fixed from improper motives and in disregard
of duty. * * * It is the rule that an excessive valua-
tion, merely, does not establish fraud, but the attending
circumstances may be such as to lead to the conclusion
that it was fraudulently and dishonestly made." (*New
Haven Clock Co.* v. *Kochersperger*, 175 Ill. 383.) There is no
evidence in this record to show that the property listed
by the appellant was re-valued at all by the board of re-
view. It is fairly to be deduced from the testimony of
the appellant that the increase arose from the decision
of the board that the appellant was the owner of other
property than that listed by him for assessment, and
which other property the board decided should be as-
sessed to him. As said before, we are to assume, pri-
marily, that the board performed the duties devolving
upon it by the statute, and that it caused such other
property, which in the opinion of the board the appellant
owned and on which he should pay taxes, to be "entered
upon the assessment books" in pursuance of the require-
ments of said section 37 of the Revenue act.

It would constitute a good ground of complaint that
the board of review caused entries to be made on the
assessment books assessing to appellant property which
he did not possess or own or so control as that it became
his duty to report the same for taxation. But he did not
produce the assessment books nor state in his bill what
appeared thereon. What the board did appears of rec-
ord,—or, at least, we must so assume in the absence of
proof to the contrary. We think a court of equity may
revise the decision of the board of review assessing prop-
erty to a tax-payer as having been owned by him and
subject to taxation and omitted from the schedule pre-

pared by him. The manner in which the board of review conducts its investigation is such that the tax-payer is not advised of the proofs heard or information obtained by the board relative to the ownership by him of property said to have been omitted from the schedule, nor has he an opportunity to contest the truth of such proof or such information before the board. He cannot appeal from any decision of the board, other than from a decision that certain property is not exempt from assessment for taxation. (*Dutton* v. *Board of Review*, 188 Ill. 386.) Equity will therefore afford a remedy and hear and determine whether the board correctly decided that the tax-payer was the owner of the property which the board assessed against him as having been omitted by him from his schedule. The inquiry in such an equitable proceeding is, what property did the board decide the tax-payer owned and had omitted from his schedule, and did he own that property? What the board decided is to be determined by the record made by the board of its decision. A tax-payer seeking the aid of equity must therefore show the record made by the board, and then he will be heard to show that he did not own the property there specified in the record. If, in fact, the board did not enter its decision on the assessment books, or if its decision did not show on such books the kind and class of property said to have been omitted, such failure would vitiate the assessment unless in some way cured. But a tax-payer cannot ignore the record made by the board of review, which, if lawfully rendered, would show specifically the property or class of property which the board decided the tax-payer owned and had not listed for assessment, and be allowed to overturn the decision by seeking, in a general way, to deny that he had any other property than that he had listed.

The decree must be and is affirmed.

*Decree affirmed.*