(No. 22160.—

IDA B. STONE *et al.* Appellants, *vs.* THE BOARD OF REVIEW OF PIKE COUNTY *et al.* Appellees.

*Opinion filed December 22, 1933.*

SPITZ & ADCOCK, and LOUIS T. GRAHAM, (EDMUND D. ADCOCK, and EDWARD BLACKMAN, of counsel,) for appellants.

OTTO KERNER, Attorney General, MERRILL H. JOHNSTON, State's Attorney, ROLLAND M. WAGNER, A. W. SCHIMMEL, and WILLIAM and BARRY MUMFORD, for appellees.

Mr. JUSTICE SHAW delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Pike county entered July 10, 1933, striking from the files the appellants' petition for writ of *certiorari* and dismissing the petition. The facts are stated in the opinion.

Louis D. Hirsheimer died September 25, 1929, in Cook county, Illinois, while claiming to be a resident of that county, leaving a last will and testament filed for probate and probated in that county on or about December 6, 1929, at which time letters testamentary were issued thereon. Nearly two years after the issuance of these letters, in the month of September, 1931, the board of review of Pike county, Illinois, upon some theory or claim that the deceased was a resident of that county, commenced an examination into his affairs and gave consideration to the question of assessing alleged omitted personal property in connection with his estate pursuant to the provisions of sub-sections 2 and 3 of section 35 of the Revenue act of 1898. (Smith's Stat. 1931, p. 2436.) These sub-sections are as follows:

"*Second*—No such charge for tax of previous years shall be made against any property at the time the liability for such omitted tax was first ascertained: *Provided,* that an assessment of real or personal property omitted from taxation by a decedent during his lifetime, shall be made

against said property and be assessed in the name of the personal representative as executor, administrator or trustees of such decedent's estate. The owner of real or personal property, and the executor, administrator or trustees of a decedent, whose property may have been omitted in the assessment in any year or number of years, or on which a tax for which such property was liable, has not been paid, and the several taxing bodies interested therein, shall be given at least five days' notice in writing by the board, of the hearing on the proposed assessment of such omitted property, and the board shall have full power to examine the owner, or the executor, administrator, trustees, legatees or heirs of such decedent or other person touching the ownership, kind, character, amount and the value of such omitted property or credits.

"*Third*—If the board shall determine that the property of any decedent was omitted from assessment during any year or number of years or that a tax for which such property was liable has not been paid, it shall be the duty of said board to given written notice to the executor, administrator or trustees of such decedent of the assessments made against such property and the amount thereof, and thereupon it shall be the duty of such executor, administrator or trustees to retain in his or their hands sufficient of the assets of such decedent's estate to pay the tax when extended on such assessment, and it shall be the duty of the county clerk to file in the county or probate court, a copy of such assessment, together with the rate of taxation thereon certified by such county clerk, and upon the filing of such certificate, the county or probate court shall enter an order directing such executor, administrator or trustees to deposit with the clerk of the court or to sequester sufficient of the assets of said estate to pay the taxes on said assessments when extended as now provided by law, or to enter into bond in double the amount of said tax with sureties to be approved by the court conditioned

for the payment of said tax when so extended, and when so extended by the county clerk, the full amount of such tax shall be a claim of the first class against such estate: *Provided, however,* that an assessment of omitted property by the board of review in the manner provided in this act shall not be subject to review by any succeeding board."

In order to understand the issues as they are presented to this court it is necessary to note that the case was disposed of in the lower court by sustaining a motion to strike the petition for *certiorari.* This motion filed by the respondent below was based on a theory of *laches,* in that it was contended that the petitioners for *certiorari* had slept on their rights in not filing the petition in apt time. The motion was treated as a demurrer, thereby admitting all well pleaded allegations of the petition, and it is therefore necessary for us to dispose of two questions and no others: (1) Whether the petition shows on its face sufficient well pleaded allegations to warrant the issuance of the writ; and (2) whether or not the petitioners were guilty of *laches* in not filing their petition in apt time.

The petition itself alleges that the deceased testator, Louis D. Hirsheimer, was a resident of and had his domicile in Cook county at the time of his death; that he died September 25, 1929, and that his will was duly probated in Cook county on December 6, 1929, on which date letters testamentary were issued to Ida B. Stone as executrix and Ben Hirsheimer as executor; that on October 17, 1931, Ben Hirsheimer resigned as executor, and on October 19, 1931, an order was entered in the probate court of Cook county discharging him as executor and approving his final report; that on February 16, 1932, the estate was closed in Cook county, subject to the payment of a claim for 1930 and 1931 personal property taxes in Cook county, and that on March 18, 1932, an order was entered discharging the petitioner Ida B. Stone as executrix, and on said date the estate of Louis D. Hirsheimer in the probate

court of Cook county was duly declared closed and finally settled. After reciting certain provisions of the will not here material, the petition goes on to allege and set forth what purports to be a complete copy of the record of the board of review of Pike county as to the assessment of allegedly omitted personal property of Hirsheimer for the years 1905 to 1931, both inclusive. It will be sufficient for our purpose to point out that the record is very meager and consists largely of such entries as the following:

"September 19, 1931.—The board met on Sat. September 19, 1931. All members were present but the clerk of the board, Miss Freda Hoyt, so Dorothy Willsy was appointed by the board to act as clerk. The board examined the inventory of L. D. Hirsheimer, deceased, and decided to assess the estate. The board adjourned until September 25, 1931.      DOROTHY WILLSY, *Clerk."*

The next entry is also typical and is as follows:

"September 25, 1931.—The board met pursuant to adjournment with all members present. The board examined the record for real estate mortgages held by L. D. Hirsheimer. Notices to assess omitted property to executors and tax-receiving bodies mailed. Board adjourned until September 26, 1931.

DOROTHY WILLSY, *Clerk."*

Meetings seem to have been held on some twenty-three different dates, with notations similar to the one of September 29, 1931, which reads, "Continued work on the assessment of the L. D. Hirsheimer estate." There is no record of any testimony being taken or of any evidence of any kind being actually received. The entry of September 25, 1931, is the only entry in regard to any notice being given. There is no copy of the notice in the record, no statement of the persons to whom it was mailed, if anyone, and no proof of service of any kind. At the conclusion of its work the board ordered an assessment for allegedly omitted property of prior years in lump sums for the various years, not specifying the kinds of property, covering all of the period from the year 1906 down to and including the year 1931, or a total of twenty-six consecu-

tive years. The taxes and penalties extended against these entries add up to a total of over $650,000.

On October 29, 1931, the board signed a notice to "the acting executors and trustees in the estate of Louis D. Hirsheimer, deceased," advising them of the action of the board in making the assessment and notifying them to retain in their hands, for the purpose of paying taxes, sufficient assets of the estate of the deceased. This notice was served on Ida B. Stone, surviving executrix, on November 6, 1931, on the Continental Illinois National Bank and Trust Company, as trustee, on November 4, and upon Ben Hirsheimer on November 3, 1931. There is nothing in the record to show any effort on the part of the tax-assessing officers to comply with that portion of the statute which makes it the duty of the county clerk to file in the county or· probate court a copy of the assessment for the purpose of making the tax a first-class claim against the estate.

After alleging in detail some ten reasons why the petitioners claim the record of the board of review to be void and subject to be quashed, the petition proceeds to set forth the reasons for it not having been filed until May of 1933. It is there set forth, in substance, that the entire proceeding of the board of review was commenced and concluded more than a year after letters testamentary were issued in the estate and thereafter it was no longer possible to perfect a first-class claim against that estate, and that no action was taken by the people for the purpose of attempting to have the claim perfected against the estate in the probate court; that no action of any kind was taken until October of 1932, when a bill in chancery was filed against the appellants seeking an accounting and seeking to subject the moneys received by them from the estate to the payment of the allegedly omitted personal property taxes for the twenty-six years in question. The petition further alleges that summons in that chancery suit was not served on the petitioner Ida B. Stone until March 1, 1933, approximately

two months prior to the filing of this petition. They also alleged they were not able to obtain an inspection of or complete the copying of the records of the board of review until April 8, 1933.

The motion to strike the petition is based upon five grounds: (1) That the petition does not show the absence of an adequate remedy at law; (2) that the tax for 1931 was a current tax and not an omitted property tax, as to which the petitioners did have an adequate remedy at law; (3) that the petitioners have acquiesced in the proceedings of the board of review by not taking timely action to question it; (4) that the petitioners are guilty of *laches;* and (5) because of unreasonable delay great detriment, expense, damage and inconvenience to the public have resulted and would result from the quashing of the assessment in question.

The question of *laches* and the alleged public inconvenience which would be caused by a granting of the writ seems to have been the controlling one in the mind of the trial court and the principal reason for striking the petition from the files. The affidavits in support of the motion are all very similar and in substance tend to show that the different municipalities in Pike county prepared budgets, made levies, expended money and incurred indebtedness on the theory that the assessment was valid and that the taxes would be paid. The appellees state that if these tax-assessing units had received reasonable notice that the assessment would be attacked, they would have, to quote from one of the affidavits, "incurred liabilities, prepared budgets, spent money and made levies in a manner different from the one adopted and would have regulated their municipal expenses and contracts accordingly."

If the assessment in question is to be sustained at all, it must be within the limits and in accordance with the express directions and procedure prescribed by the statute above quoted. This amendment to the Revenue act be-

came the law in Illinois on July 1, 1915, prior to which time there was no authority in this State for any attempt at such a levy. In the case of *People* v. *Sears,* 344 Ill. 189, we held quite definitely that this particular act had no retroactive effect, and it is therefore immediately apparent that the effort of the board of review in this case to make assessments prior to that date is without authority of law. This would be a sufficient reason for the issuance of the writ of *certiorari* if none other. existed. Other reasons do exist, however, which we shall presently point out.

An examination of the statute in question shows that it is complete and covers the entire subject, giving, as it does, an outline of all of the procedure to be followed in assessing and collecting the tax. The act prescribes six definite steps to be taken, each of which is essential and no one of which can be said to be more essential than any of the others. First is the jurisdictional requirement of five days' notice in writing to all parties interested; second, comes the requirement that there be a determination of the fact that the property was omitted from previous assessments; third, and after such determination the act requires written notice to the executors, administrators, etc., of the assessment and of its amount; fourth, and after such notice has been given comes the duty of the executor to retain funds with which to pay; fifth, it becomes the duty of the county clerk to file with the county or probate clerk a copy of the assessment with the rate of tax; and sixth, it becomes the duty of the court to enter an order directing the executor, administrator or trustee to deposit or sequester the funds or give bond to pay. Thereupon, and only thereupon, the tax becomes a claim of the first class against the estate.

It is a general rule of law adopted in this and most of the States, that, as expressed by Cooley in his work on Taxation, (2d ed. p. 15,) "the obligation of the citizen to pay taxes is clearly a statutory creation, and taxes can be

levied, assessed and collected only in the modes pointed out by express statutes." This quotation from Cooley was adopted by this court as a correct statement of the law in Illinois, in *People* v. *Sears, supra.*

In the case of *People* v. *Biggins,* 96 Ill. 481, a bill was filed by the People of the State of Illinois, in the circuit court of Madison county, to enforce by foreclosure the lien given by law on certain land in that county for taxes for the years 1871 to 1878, both inclusive, amounting in all to the sum of $9000. A general demurrer was sustained to the bill, and this action of the trial court was affirmed both in the Appellate Court and this court. In holding that the statutory procedure was exclusive of all other remedies we used the following language, which is pertinent to the case now before us: "It has, however, been suggested that the State is not bound to follow the statutory mode provided for the collection of the revenue but owing to its sovereignty may resort to any method it may desire. The officers of the State, in the collection of revenue, are as much bound to observe the law and proceed in the mode pointed out by the statute as an individual is required to observe the law in the enforcement of any right. The revenue can only be collected in the manner pointed out by the statute, and whether it is being collected by the State officers, a county or incorporated town can make no difference. Each and all must proceed in the manner provided by the law. It is also insisted as a reason why a resort should be had to a court of equity, that owing to the imperfections of our Revenue law a sale of land for taxes does not result in the collection of the revenue. Whether the system is a good one, a bad one or one which is so defective as not to accomplish the object intended are matters with which we have no concern. If our Revenue law is defective it is the duty and business of the legislature to amend it. Courts are powerless to interfere. They cannot make, but can only construe, laws

after they are made by the legislature. If it is wise and proper that our revenue should be collected by bill in chancery, which we by no means concede, then the legislature should confer the jurisdiction upon that court, but until that is done we perceive no ground upon which we can hold that resort can be had to that tribunal."

The case of *Jarman* v. *Board of Review*, 345 Ill. 248, is so squarely in point and so controlling in this case that we might with entire propriety quote the whole opinion as a part of this one. To avoid prolixity we will merely refer to it and point out that we adhere to it in all respects. In that case we held that a board of review in assessing personal property alleged to have been omitted from taxation by a deceased acts in a judicial capacity and that its proceedings may be reviewed by the common law writ of *certiorari*. We held that a bill in chancery would not lie in the premises to interfere, and that a return to a writ of *certiorari* which makes no showing that evidence was heard fairly tending to sustain the determination of the board is insufficient to sustain its action.

The petition for a writ of *certiorari* in the present case was sufficient and should have been granted for many reasons. The motion to strike the writ amounted to a demurrer and was so treated by the court and both parties. The petition alleged that the deceased was a resident of Cook county and not of Pike county, which, if true, would be a sufficient reason for quashing the assessment. The record fails to affirmatively show full compliance with the jurisdictional requirement of notice. The only thing shown by the record is shown in the minutes of the meeting of September 25, 1931, in the following words: "Notices to assess omitted property to executors and tax-receiving bodies mailed." This is clearly insufficient. No copy of the notice is set forth in the record so that we may determine whether or not it was legal and sufficient. No statement is made as to what the notice contained and whether

or not it fixed a time and place for the hearing more than five days in advance, nor is there any proof of notice by the return of an officer, the affidavit of an individual, or otherwise, either showing or tending to show that it was actually served. The record does not disclose the names of the persons to whom the notices are stated to have been given. The most that can be said of this record is that it states the conclusion of Dorothy Willsy, the clerk of the board, that notices to assess omitted property had been given to some executors and tax-receiving bodies by mail. Since we cannot review this kind of a conclusion, there being no facts preserved of record for us to pass on, we must hold that the record is in this respect deficient and that the board of review was without jurisdiction to proceed in the matter.

The record is in other respects deficient, and these deficiencies are almost identical with the deficiencies found by us to exist in the *Jarman case, supra*. Not a word of testimony or evidence is preserved in it. Repeated recitals on different dates, such as, "The board examined the records for real estate mortgages by L. D. Hirsheimer," and "State's attorney went to Springfield to meet the Attorney General concerning the L. D. Hirsheimer estate;" "took up the matter of assessing the L. D. Hirsheimer estate as to real estate mortgages, stocks and bonds held by L. D. Hirsheimer," and "continued work on the assessment of the L. D. Hirsheimer estate," constitute an insufficient record upon which to base a finding by a body acting in a judicial capacity. In the *Jarman case* we used the following language, which is applicable and controlling here: "The principle applied in these cases is decisive here. The record contains a recital that 'the matter of a hearing' upon personal property of the Jarman estate omitted 'in former years' was 'taken up' by the board for 'examination, investigation and consideration, to determine the ownership, kind, character, amount and value of such omitted property,' and it then

states that 'those appearing before the board' were B. O. Willard, attorney for appellant, and Ben Ray. Without further recital it then sets forth the order specifying the nature of the property and fixing the amount of assessments for the years 1921 to 1928, inclusive. The return further shows that the amounts thus fixed were entered in the several assessors' books. Such a return makes no showing that evidence was heard fairly tending to sustain the determinations thus made for the several years in question or that any other proper basis existed for such determinations. Nor may it be more than assumed that any evidence whatever was heard or taken into account. In *Weber* v. *Baird,* 208 Ill. 209, we said: 'The board cannot decide that a tax-payer shall pay taxes on an amount arbitrarily fixed by the board.' To uphold its determination here would be, in effect, to accord it the right of such arbitrary action."

Applying the principles of our previous holdings to the case at bar, it is apparent that the writ should have issued in this case unless it must be held that the appellants have been guilty of such *laches* and acquiescence that the granting of the writ would result in great public inconvenience. We will consider that point.

In making the contention as to *laches* and acquiescence the appellees place themselves in an anomalous position. They slept on their rights for twenty-six years in the matter of attempting to assess allegedly omitted personal property, and then continued their somnolence during an additional period of two years after the death of the testator before even commencing to attempt to make the assessment. Not only that, but after claiming to have completed the attempted assessment and serving notice thereof, they failed entirely, so far as this record shows, to comply with the plain mandate of the statute requiring the filing of the necessary certificate in the office of the probate court until after the estate had been settled, the executor discharged

and the time gone by during which they might have secured a first-class claim as provided for in the act. In the face of this record of their own *laches* and acquiescence they contend that the appellants should be barred of their rights by reason of their having failed for a period of eighteen months after the so-called assessment was made, and a period of six or eight weeks after the appellant Ida B. Stone was served with summons in the chancery suit, in the filing of their petition. In support of this claim they rely entirely upon affidavits.

Taking the appellees' own claim as stated in their brief and argument, their contention is that "the affidavits attached to the motion were eight in number and were made by the officials of the various tax-receiving bodies- who were interested in the collection of the tax. These affidavits, excepting that of the county clerk, J. D. Harpole, show that the different municipalities interested prepared budgets, made levies, expended money and incurred indebtedness on the faith of the validity of the assessment of October 29, 1931; that they had knowledge of the making of the assessment, and that they had no notice that the tax would be resisted until the third day of May, A. D. 1933, when the petition for *certiorari* was filed; that they conducted their respective municipal functions on the belief that the tax would be paid, and that if they had received reasonable notice that the assessment would be attacked they would have incurred liabilities, prepared budgets, spent money and made levies in a manner different from the one adopted and would have regulated their municipal expenses and contracts accordingly; that if the assessment is held void their credit will be impaired, and great injustice and inconvenience will result." It is this contention, and this only, stated in the appellees' own words, which they claim is sufficient to bar the issuance of the writ. The appellees, on page 19 of their brief and argument, expressly declined to answer all other questions presented, and we may there-

fore take it as conceded that all other matters in this opinion which were argued by the appellants are acceptable to the appellees.

An examination of the affidavits discloses that they are based upon several false premises. The appellees, as well as the appellants, are presumed to know the law, and they must therefore be presumed to have known at all the times mentioned in the affidavits, that the board of review had not preserved a record showing that it had jurisdiction to make the assessment or any record sufficient to sustain it. They must also be presumed to know that the necessary statutory steps had not been taken to perfect the claim as a claim of the first class against the estate of Louis D. Hirsheimer, deceased. They knew of the decisions of this court in *People* v. *Biggins, supra, Jarman* v. *Board of Review, supra,* and *People* v. *Sears, supra,* from which we have extensively quoted. It is therefore apparent that if the various tax-assessing officers of Pike county did, in fact, rely upon the collection of this tax they did so blindly, in disregard of the statutes governing the situation and in disregard of our prior decisions. All of these affidavits state that except for the belief that this tax would be paid, "they would have incurred liabilities, prepared budgets, spent money and made levies in a manner different from the one adopted, and would have regulated their municipal expenses and contracts accordingly." It should hardly be necessary for us to point out that the incurring of liabilities, the preparation of budgets, the spending of money and the making of levies are presumed to be based upon the public need rather than upon the possibilities of obtaining money to be spent.

In the act in question it is apparent that the legislature had in mind the fundamental principle of due process of law and also fully recognized the dangers inherent in a proceeding of this kind. The present case clearly illustrates the possibilities of abuse which might be expected to appear

if the due forms of judicial procedure are to be let down and if the policy of the law is to be so modified as to permit stale claims against a decedent to be enforced against his heirs and devisees long after his death and long after they have supposedly come into an inheritance. It was the intention of the legislature to permit the enforcement of a just tax claim against the estate of a decedent, but only in the manner and within the forms and procedure by the act provided. The claims here in question, if there are any just claims, were in part matured a quarter of a century before the death of Louis D. Hirsheimer and were all fully matured when he died. It is provided that through full compliance with the act the various tax assessing bodies may place their claims on a par with funeral expenses and expenses of administration in the settlement of a decedent's estate, and this is the only means of collection provided by the act. The State is bound by this condition created by itself, and it is not a matter of limitation but a condition of the liability. (*Durflinger* v. *Arnold,* 329 Ill. 93.) It is a rule of construction in this court that statutes imposing a tax are construed most strongly against the government and in favor of the tax-payer. (*People* v. *Scars, supra; Fidelity and Casualty Co.* v. *Board of Review,* 264 Ill. 11; *People* v. *Barrett,* 309 id. 53.) We are forced to hold that this claim, if one exists, must be established upon a proceeding judicial in nature and in strict compliance with the statute as a claim of the first class against the estate of the decedent during its administration and not otherwise. Any other ruling would be contrary to our views as to due process of law and would be contrary to public policy in that an estate might never be settled to that point where an heir or devisee could feel secure in its enjoyment.

The judgment of the circuit court is reversed and the cause remanded to that court for such further procedure as may not be inconsistent with the views herein expressed.

*Reversed and remanded.*